## COLLEEN COLBERT *v.* CHARLES N. CARR
## (AC 33817)

Alvord, Bear and Mihalakos, Js.

---

230

Argued October 22, 2012—officially released January 15, 2013

*Richard C. Stewart,* for the appellant (plaintiff).

*Charles N. Carr,* pro se, the appellee (defendant).

ALVORD, J. The plaintiff, Colleen Colbert, appeals from the judgment rendered by the trial court in this paternity action that she brought against the defendant, Charles N. Carr. The plaintiff claims that the court improperly (1) denied her request for attorney's fees, (2) failed to award three years of child support retroactive from the date of the filing of her petition to establish paternity and (3) refused to deviate from the mandatory child support guidelines. We affirm the judgment of the trial court.

The record discloses the following facts and procedural history, either as found by the trial court or undisputed by the parties. The parties, who were never married, conceived their son in 1997, when the plaintiff was thirty-six years old and the defendant was twenty-five years old. At that time, the plaintiff was employed by a "turnaround management company." Subsequently, from 2001 until 2010, she was employed by various pharmaceutical companies. She has three college degrees. The defendant has been a police officer since 2000. Prior to that time, he was in the military service and then was involved in the operation of an indoor shooting range in the state of Washington.[1]

The parties were not living together when the plaintiff became pregnant. When she advised him of the pregnancy, he told her that he was not emotionally willing or capable of being a father at that time. She told him that she could manage on her own. Their son was born in February, 1998. The defendant saw his son a few days after his birth but chose not to establish a relationship with him.[2] Nevertheless, the birth certificate lists

[1] The defendant owns 10 percent of the Washington business, which has been a passive investment for him from the time that he moved from Washington back to Connecticut.

[2] The defendant saw his son two additional times, once when the boy was approximately thirteen months old and again in February, 2010.

the defendant as the father of the parties' son, and the plaintiff's verified petition for paternity alleged that the defendant "acknowledged paternity orally and in writing."[3]

A few months after the child's birth, the plaintiff contacted the defendant and indicated that she would need his financial support to raise their child. She told him the amount that she needed, and he paid her the amount requested. The defendant voluntarily continued to pay the plaintiff monthly child support in agreed upon amounts for thirteen years, i.e., continuing throughout the trial. In 2001, he procured a life insurance policy for the benefit of his son when the plaintiff voiced concerns that the defendant could be killed in the line of duty. In 2010, at the plaintiff's request, the defendant placed their son on his health insurance policy. Also in 2010, the defendant cooperated with the plaintiff in effecting a change to their son's birth certificate to correct an error in the defendant's first name. It was uncontested that the defendant never disputed nor denied that he was the father of the parties' son, that he had acknowledged paternity on multiple occasions and that he had contributed to the child's support from the time of their son's birth throughout the child's life.

On February 20, 2010, at the plaintiff's request, the defendant met with their son. Shortly after that meeting, the defendant told the plaintiff that he did not wish to maintain contact with their child. According to the plaintiff, this refusal to be a part of the child's life adversely affected their child. Approximately four months later, the plaintiff contacted an attorney. By letter dated June 28, 2010, the plaintiff's counsel advised

---

[3] The defendant signed a "Statement of Parentage" on March 13, 1998, in which he declared that he was the father of the parties' son and that he consented to his name being placed on the child's birth certificate.

the defendant that the plaintiff had retained his services to protect the child's "financial security by putting into place in the Connecticut court system a finding of paternity, and an order of child support." Enclosed with the letter was a copy of the verified complaint prepared by the plaintiff's counsel, which the plaintiff's counsel stated would not be served until he had heard from the defendant or the defendant's counsel.[4] The defendant contacted an attorney, who corresponded with the plaintiff's counsel.

The plaintiff commenced this action on October 26, 2010. In a one count complaint, the plaintiff alleged that (1) she gave birth to a son in February, 1998, (2) the child was conceived in May, 1997, (3) the defendant is the father of the child, (4) the defendant is named in the birth certificate and has acknowledged paternity orally and in writing, (5) the action was brought prior to the child's eighteenth birthday and (6) the case did not involve recipients of public assistance. The defendant filed his answer on October 28, 2010, two days after he had been served with process, admitting the allegations in all six paragraphs. The trial commenced on March 4, 2011, and was continued to and concluded on August 8, 2011. After the parties rested, the court rendered its judgment orally, without argument by counsel or additional briefing of the issues.

The court noted that the plaintiff brought the action pursuant to the paternity statute. See General Statutes § 46b-160. The court stated, however, that it had not

---

[4] The letter was admitted, without objection, as a full exhibit at trial. The contents of the letter provided, in part, as follows: "It has been my experience that matters such as these are often handled best for all parties concerned if an amicable agreement is reached. Contested litigation is not only very expensive, it can also lead to results that are not as beneficial to either party as an agreement worked out amicably . . . . I suggest that you obtain the services of an attorney familiar with family law in Connecticut, and have the attorney contact me in the very near future."

been necessary to proceed under that statutory scheme: "In this case, paternity of the child is already established in that [the defendant] had acknowledged paternity at the time of, or very close to, the birth of the child [and] has continuously acknowledged that paternity . . . . This is the kind of action that usually commences in a [family support] magistrate's court;[5] usually a petitioner goes to the support enforcement bureau and asks that another party be required to pay child support.[6] . . . Based on the evidence that I've heard, I've heard no suggestion that [the defendant] was unwilling or unable to sign an acknowledgment of paternity [in accordance with General Statutes § 46b-172], making this entire proceeding unnecessary except to establish support, and there was another avenue available to do that, namely, the [family support] magistrate's court as I've indicated."

The court then entered child support orders pursuant to the guidelines, reserved jurisdiction for the purpose of postmajority educational support, denied the plaintiff's request for three years of retroactive child support and denied the plaintiff's request for an award of attorney's fees pursuant to General Statutes § 46b-171 (a). This appeal followed.

I

The plaintiff's first claim is that the trial court improperly denied her request for an award of attorney's fees. Because she commenced this action pursuant to § 46b-160, she argues that an award of attorney's fees was mandatory rather than discretionary. It is the plaintiff's position that the defendant's acknowledgment of paternity was insufficient to preclude such an award under

[5] See General Statutes § 46b-231 et seq.
[6] See General Statutes § 17b-179 (h).

§ 46b-171 (a) because he failed to comply with the formal requirements for acknowledgment set forth in § 46b-172.[7]

Section 46b-160 appears in chapter 815y of the General Statutes, which is entitled "Paternity Matters." Chapter 815y sets forth classifications of persons and entities that may bring a statutory cause of action for paternity. Section 46b-160 (a) allows the mother of the child to bring such an action. General Statutes § 46b-162 provides in relevant part that "[t]he state or any town interested in the support of a child born out of wedlock may, if the mother neglects to bring such petition, institute such proceedings against the person

[7] General Statutes § 46b-172 (a) (1) provides in relevant part: "In lieu of or in conclusion of proceedings under section 46b-160, a written acknowledgment of paternity executed and sworn to by the putative father of the child when accompanied by (A) an attested waiver of the right to a blood test, the right to a trial and the right to an attorney, and (B) a written affirmation of paternity executed and sworn to by the mother of the child shall have the same force and effect as a judgment of the Superior Court. It shall be considered a legal finding of paternity without requiring or permitting judicial ratification . . . . Such acknowledgment shall not be binding unless, prior to the signing of any affirmation or acknowledgment of paternity, the mother and the putative father are given oral and written notice of the alternatives to, the legal consequences of, and the rights and responsibilities that arise from signing such affirmation or acknowledgment. . . . The notice to the putative father shall include, but not be limited to, notice that such father has the right to contest paternity, including the right to appointment of counsel, a genetic test to determine paternity and a trial by the Superior Court or a family support magistrate and that acknowledgment of paternity will make such father liable for the financial support of the child until the child's eighteenth birthday. . . . The notices shall also explain the right to rescind the acknowledgment . . . and shall explain that the acknowledgment cannot be challenged after sixty days, except in court upon a showing of fraud, duress or material mistake of fact."

The "Statement of Parentage" that the defendant signed on March 13, 1998, contained his declaration that he was the father of the parties' son and that he consented to his name being placed on the child's birth certificate. The trial court, however, found that the defendant never had been asked to sign any additional acknowledgment of paternity: "Based on the evidence that I've heard, I've heard no suggestion that [the defendant] was unwilling or unable to sign an acknowledgment of paternity . . . ."

accused of begetting the child . . . ." This statutory scheme pertaining to paternity actions is not, however, the exclusive way to establish paternity.[8]

A paternity action brought pursuant to § 46b-160 must be instituted by service of a verified petition, summons and order upon the putative father himself. "Proceedings *to establish paternity* of a child born or conceived out of lawful wedlock . . . shall be commenced by the service on the *putative* father of a verified petition of the mother or expectant mother. Such petition may be brought at any time prior to the child's eighteenth birthday, provided liability for past support shall be limited to the three years next preceding the date of the filing of any such petition." (Emphasis added.) General Statutes § 46b-160 (a) (1) (A). "[B]ecause § 46b-160 is in derogation of the common law, it is to be strictly construed." *Hayes* v. *Smith*, 194 Conn. 52, 61, 480 A.2d 425 (1984).

Section 46b-171 (a) (1) (A), which also is part of chapter 815y, provides in relevant part: "If the defendant is found to be the father of the child, the court or family support magistrate shall order the defendant to stand charged with the support and maintenance of such child, with the assistance of the mother if such mother is financially able . . . and to pay a certain sum periodically until the child attains the age of eighteen years or as otherwise provided in this subsection. . . ." Section 46b-171 (a) (1) (B) provides in relevant part: *"The*

---

[8] In *Weidenbacher* v. *Duclos*, 234 Conn. 51, 661 A.2d 988 (1995), the petitioner brought a habeas corpus action for the custody of a child. The respondents claimed that he had no standing to bring the action because a putative father can establish paternity only by way of the statutory procedure set forth in General Statutes § 46b-172a, which is in chapter 815y. Id., 63–64. Our Supreme Court disagreed. "[W]e conclude that the statutory scheme pertaining to paternity actions . . . does not foreclose the Superior Court's jurisdiction to determine whether a putative father is, in fact, the biological father of a child. . . . [T]he statutory procedures do not pose a barrier to the petitioner's habeas corpus action for the custody of the child." Id., 68.

*court or family support magistrate shall order the defendant to pay such sum to the complainant,* or, if a town or the state has paid such expense, to the town or state, as the case may be, *and shall grant execution for the same and costs of suit taxed as in other civil actions, together with a reasonable attorney's fee,* and may require the defendant to become bound with sufficient surety to perform such orders for support and maintenance. . . ." (Emphasis added.)

The plaintiff claims that the wording of 46b-171 (a) clearly required that the trial court award her reasonable attorney's fees because she commenced the action pursuant to § 46b-160 and the defendant was found to be the father of her child. She does not dispute the fact that an award of attorney's fees by the trial court would not be mandatory if she had commenced her action pursuant to General Statutes § 46b-61.[9]

At the time of trial, the plaintiff testified that she owed her attorney $20,994. Her attorney's affidavit, which contained an itemization of his fees, was admitted as a full exhibit. Although the plaintiff's attorney argued that an award of attorney's fees was mandatory under § 46b-171 (a) (1) (B) of the paternity statutes, the court declined to award them. The court stated that it believed that it had discretion to deny the request for attorney's

[9] Section 46b-61 appears in chapter 815j of the General Statutes, which is entitled "Dissolution of Marriage, Legal Separation and Annulment." It provides in relevant part that "[i]n all cases in which the parents of a minor child live separately, the superior court for the judicial district where the parties or one of them resides may, on the application of either party and after notice is given to the other party, make any order as to the custody, care, education, visitation and support of any minor child of the parties . . . ." General Statutes § 46b-61.

General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the *court may order* either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, *either parent to pay the reasonable attorney's fees of the other* in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ." (Emphasis added.)

fees. The court emphasized that § 46b-160 is used to *establish* paternity, but, in this case, "paternity of the child is already established in that [the defendant] had acknowledged paternity at the time of, or very close to, the birth of the child, has continuously acknowledged that paternity, has paid child support and thereby acknowledged paternity continuously."[10] We agree with the trial court.

Under the circumstances of this case, paternity was never an issue and the court did not *establish* paternity. The court found that the defendant was the father of the child on the basis of the defendant's own admissions, which he made before the trial commenced and, in fact, at the time of the child's birth. The amount of child support, including any retroactive support, was the issue to be determined by the court. The statutes pertaining to contested child support, as opposed to contested paternity, do not provide for mandatory attorney's fees. Accordingly, the trial court did not improperly deny the plaintiff's request for attorney's fees.

II

The plaintiff's next claim is that the court improperly failed to award three years of child support retroactive from the date of the filing of her petition under § 46b-160. She concedes that such an award is discretionary under § 46b-171 (a) (1) (A), but argues that the court abused its discretion in denying an award of retroactive child support because the amounts voluntarily paid by the defendant "were deficient." She claims that the defendant's "rejection of the child" has taken an "emotional toll" on her and the child and "will lead to future expenses that are routinely covered by the other parent,

---

[10] Furthermore, the statute requires service "on the *putative* father . . . ." (Emphasis added.) General Statutes § 46b-160 (a) (1) (A). "Putative" is defined as "[r]eputed; believed; supposed." Black's Law Dictionary (9th Ed. 2009). In this case, it was undisputed that the defendant was the biological father of the child.

for example, birthday and holiday gifts, clothing, vacations, etc."

"[T]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Vanicky* v. *Vanicky*, 128 Conn. App. 281, 284, 18 A.3d 602 (2011). We have reviewed the record and find ample support for the court's determinations. We cannot conclude that the court abused its discretion in denying the plaintiff's request for three years of retroactive child support when the defendant has been paying child support throughout his son's life, has paid the amounts for child support requested by the plaintiff and, in some instances, has paid more than the amounts set forth in the child support guidelines.

### III

The plaintiff's final claim is that the court improperly refused to deviate from the mandatory child support guidelines in determining the defendant's required payments for child support. The plaintiff argues that the defendant's refusal to have contact with their son has led to emotional difficulties and additional expenses for the child. She also claims that a deviation from the guidelines would have been in the best interests of the child.

Although judicial review of a trial court's orders in domestic relations matters is generally confined to

determining whether the court abused its broad discretion, "[i]n the case of [child] support . . . the parameters of the court's discretion have been somewhat limited by the factors set forth in the child support guidelines." *Pagliaro* v. *Jones*, 75 Conn. App. 625, 632, 817 A.2d 756 (2003). General Statutes § 46b-215b (a) provides in relevant part: "The child support and arrearage guidelines issued pursuant to section 46b-215a, adopted as regulations pursuant to section 46b-215c . . . shall be considered in all determinations of child support award amounts, including any current support, health care coverage, child care contribution and past-due support amounts, and payment on arrearages and past-due support within the state. In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount to be ordered. . . ."

In the present case, the plaintiff claims that the court improperly refused to apply the deviation criteria set forth in § 46b-215a-3 of the Regulations of Connecticut State Agencies, which would justify a child support order different from the presumptive support amount. She concedes that the only two criteria that could apply here would be the "[b]est interests of the child" and "[o]ther equitable factors." Regs., Conn. State Agencies § 46b-215a-3 (b) (6) (C) and (D).[11] We disagree.

The plaintiff claims that deviation is warranted based on the best interests of the child and other equitable factors because the defendant "has utterly rejected [his son's] attempts at forming a parental relationship,"

---

[11] Section 46b-215a-3 (b) (6) of the Regulations of Connecticut State Agencies provides in relevant part: "In some cases, there may be special circumstances not otherwise addressed in this section in which deviation from presumptive support amounts may be warranted for reasons of equity. Such circumstances are limited to the following . . . (C) Best interests of the child. (D) Other equitable factors."

which places "a double burden of parenting on [the plaintiff]."[12] She further claims that the defendant has substantial assets that the court failed to consider, i.e., his interest in the shooting range in Washington and rental income from his property in Bridgeport.[13] The trial court, in response to the plaintiff's claim that she had proven that a deviation from the presumptive amount was appropriate and equitable, stated: "It's a factual matter and you have failed to do so." Our review of the record does not lead us to a contrary conclusion. We find no fault in the court's refusal to deviate from the presumptive amount of child support as set forth in the child support guidelines.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] The plaintiff repeatedly stresses the refusal of the defendant to be a part of his son's life, as his son wants a parental relationship. It is not the function of the judicial system, however, to punish the defendant for his unwillingness to form a bond with his child. Under the law, the defendant is furnishing the financial support required of him.

[13] The defendant testified as to his limited interest in the shooting range and the income that he derives from that business. He also testified with respect to the expenses he incurred and the income he derived from his rental property.

