******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HEDYEH RENSTRUP *v.* JENS RENSTRUP
## (AC 44489)

Bright, C. J., and Moll and Vertefeuille, Js.

*Syllabus*

The defendant appealed from the trial court's financial orders issued in connection with the judgment dissolving his marriage to the plaintiff. During the parties' marriage, the defendant was the primary wage earner for the family while the plaintiff remained at home and raised their two minor children. At the time of dissolution, the defendant earned, inter alia, a base salary and was eligible for a cash bonus targeted at 30 percent of his base salary. The defendant's weekly net income exceeded $4000. The trial court attributed to the plaintiff an earning capacity of $40,000 per year, and, in light of the plaintiff's earning capacity, a deviation criterion under the Child Support and Arrearage Guidelines set forth in the applicable regulations (§ 46b-215a-1 et seq.), the court used that deviation in its calculation of the defendant's child support obligation. The court added the plaintiff's earning capacity to the defendant's net weekly income to arrive at a new, combined weekly income and used the guidelines to determine a basic child support range. Rather than adjusting the defendant's basic child support obligation downward from the original range to account for the plaintiff's earning capacity, the court ordered the defendant, the noncustodial parent, to pay a weekly child support award of $1000 per week, which reflected a 5 percent deviation upward from the top of the basic child support range based on the parties' combined weekly income. The court also ordered the defendant to pay a supplemental child support payment equal to 17.71 percent of the after-tax amounts of any bonuses and other income he earned. The court awarded the plaintiff alimony and a supplemental alimony award in the amount of 17.71 percent of the after-tax amounts of any bonuses and other income earned by the defendant in any year in which he has an alimony obligation to the plaintiff. *Held*:

1. The trial court abused its discretion in calculating the defendant's initial child support obligation:

   a. The trial court erred by increasing, rather than reducing, the defendant's obligation based on the plaintiff's earning capacity; although the court was permitted in its application of the deviation criteria to consider the plaintiff's earning capacity, its application of the criteria was inconsistent with its reason for the deviation and with the principles on which the guidelines are based, which contemplate that the noncustodial parent's basic child support obligation will account for each party's pro rata share of child support as calculated by the guidelines and should not reflect the parties' total child support obligation; moreover, once the court decided to factor in the plaintiff's earning capacity to determine the parties' child support obligations, it should have assigned at least a portion of the joint obligation to the plaintiff based on her earning capacity, rather than assigning the entire child support obligation to the defendant.

   b. The trial court abused its discretion in ordering the defendant to pay the plaintiff $1000 per week as basic child support as part of its initial child support order without making the required findings to support its application of the deviation criteria: although the court made a finding of the presumptive child support amount in which consideration of the plaintiff's earning capacity erroneously justified an upward deviation in the defendant's basic child support obligation from $705 to $955 per week, it did not make a specific finding to justify its further increase of the defendant's obligation from $955 to $1000 per week, and failed to provide an explanation as to the deviation criteria on which it relied; moreover, the court's reliance on a statute (§ 46b-86) in finding that the upward deviation from $955 to $1000 per week was permitted, as it represented a deviation of less than 15 percent of the total amount, was improper, as § 46b-86 governs modification of child support orders, not initial child support orders.

2. The trial court's supplemental child support order, which awarded the

plaintiff 17.71 percent of the defendant's undetermined future income above his base salary, was based on a clearly erroneous factual finding and was in error: in the present case, although it was within the court's discretion to make a supplemental order with respect to income of an indeterminate amount as the parents' net weekly income exceeded $4000, the error was not the amount awarded in the court's order but, rather, the court's failure to provide an explicit justification as to how the additional funds would be used for the benefit of the children and how the award was related to the factors identified in the applicable statute (§ 46b-84 (d)); moreover, there was no evidence in the record to support the trial court's factual finding that the defendant's annual cash bonus was "capped" at 30 percent of his base salary, as that finding conflicted with the only evidence presented on that issue, the defendant's employment contract, and, thus, the court's finding was clearly erroneous.

3. This court concluded that the trial court's supplemental alimony award failed for the same reason the supplemental child support award failed, namely, because the order was based, in part, on the trial court's erroneous finding that the defendant's annual bonus was capped at 30 percent of his annual salary; there was no evidence in the record to support the court's finding that the defendant's bonus was capped at 30 percent of his annual salary and, thus, the supplemental alimony order did not have a reasonable basis in fact.

4. This court concluded that, because the trial court's error with respect to the supplemental alimony award was not severable from that court's property distribution, on remand, the court must reconsider the entirety of the mosaic of financial orders: although under some circumstances a child support award may be severable from the other financial orders, in the present case, the court misapplied the child support guidelines and improperly ordered supplemental child support and alimony awards on an erroneous finding of fact, and, given the potential size of the supplemental child support order and its link to the supplemental alimony order, the court's child support orders also were part of the mosaic of financial orders issued by the court; accordingly, because it was uncertain whether the court's other financial awards would remain intact after the court reconsidered the child support orders and the supplemental alimony order in a manner consistent with this court's opinion, the trial court, on remand, must reconsider all of the financial orders, including the property distribution orders.

Argued September 13, 2022—officially released January 17, 2023

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Hon. Gerard I. Adelman*, judge trial referee; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*Campbell D. Barrett*, with whom were *Stacie L. Provencher*, and, on the brief, *Johanna S. Katz* and *Kelly A. Scott*, for the appellant (defendant).

*Kenneth J. Bartschi*, with whom was *Michael S. Taylor*, for the appellee (plaintiff).

*Opinion*

BRIGHT, C. J. The defendant, Jens Renstrup, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Hedyeh Renstrup, and entering certain financial orders. On appeal, the defendant claims that the court improperly (1) calculated its basic child support award, (2) issued an open-ended, uncapped percentage based supplemental child support award, (3) issued an open-ended, uncapped supplemental alimony award, (4) based both of its supplemental awards on a clearly erroneous finding that the defendant's bonus income had a "cap" of 30 percent of his base salary, and (5) included certain unvested shares and stock options in its distribution of marital property.[1] We conclude that the court erred in its child support and alimony orders and, accordingly, reverse in part the judgment of the trial court and remand the matter for a new trial on all financial orders.[2]

The following facts and procedural history are relevant to our resolution of the present appeal. The defendant was fifty-five years old at the time of trial. He holds a medical degree, earned in 1991, as well as a master's degree in business, earned in 1993. The plaintiff was thirty-eight years old at the time of trial. She earned a bachelor's degree in information technology in 2004.

In its corrected memorandum of decision, the court found the following facts. "The parties first met each other in Denmark in 2005, and thereafter began dating and living together in that country. They subsequently moved to New Jersey when the defendant accepted an employment offer in the United States. In 2008, the parties very briefly returned to Denmark for their wedding ceremony, which took place on August 16. In 2010, the defendant accepted an offer of employment from . . . a pharmaceutical company. As a result, the parties relocated to Belgium for five years. The parties had two children born issue of the marriage while residing in Belgium. . . .

"In 2015, the parties and their children returned to the United States when the defendant secured employment with Alexion Pharmaceuticals, Inc. (Alexion), located in New Haven, Connecticut. The defendant was hired as the head of the company's global affairs. He held that position for close to three years until the company laid him off as part of a management change. His period of unemployment coincided with [his] diagnosis of . . . heart issues, and he received disability benefits for several months. Once he had recovered, the defendant was hired as the chief medical officer by Springworks Therapeutics, Inc. (Springworks), a relatively new pharmaceutical company located in Stamford, Connecticut. Springworks went public on the NASDAQ exchange on Friday, September 13, 2019."

Pursuant to the defendant's written employment

agreement with Springworks, he was to receive a base salary, an annual performance bonus, and incentive equity in Springworks in the form of stock options. The defendant's base salary for 2019 was $403,650 and he was eligible for a cash bonus targeted at 30 percent of his base income, although Springworks could "make upward adjustments in the targeted amount of [the] annual performance bonus." The defendant also received 1,608,556 stock options. The defendant was awarded 25 percent of his stock options on July 16, 2019, and was entitled to receive the remaining 75 percent in thirty-six equal monthly installments, so long as he remained employed by Springworks. The defendant also was awarded 92,775 shares of stock options per the option grant dated March 28, 2019, and 620,602 stock options per the option granted April 22, 2019, with a vesting commencement date of April 22, 2019. Pursuant to the public offering of Springworks, at the time of trial the defendant had rights to 244,424 shares, 14,097 stock options, and 94,302 stock options in Springworks' publicly traded stock. In addition to income from employment, the defendant also received annual income from a 25 percent ownership of a real estate investment property. The plaintiff had not worked outside of the home since March, 2009.[3]

On August 22, 2017, the plaintiff commenced the underlying dissolution action against the defendant. The matter was tried to the court, *Hon. Gerard I. Adelman*, judge trial referee, over the course of four days, beginning on August 27, 2019, and concluding on September 18, 2019.[4]

In its memorandum of decision,[5] the court dissolved the parties' marriage and entered child custody and financial orders.[6] As to custody, the court awarded the parties joint legal custody of their two minor children and ordered that the children's primary residence be with the plaintiff. As to child support, the court ordered the defendant to pay the plaintiff (1) basic child support in the amount of $1000 per week and (2) supplemental child support equal to 17.71 percent of the after-tax amounts of any bonuses and other income earned by the defendant.

The court awarded the plaintiff alimony for a period of ten years, ordering the defendant to pay the plaintiff $1750 per week for the first 104 weeks, $1500 per week for the next 104 weeks, and $1000 per week for the remaining 312 weeks. In addition, the court ordered the defendant to pay the plaintiff supplemental alimony in the amount of 17.71 percent of the after-tax amounts of any bonuses and other income earned by the defendant in any year in which he has an alimony obligation to the plaintiff.

In dividing the marital property, the court determined that the defendant's unvested Springworks shares and stock options were marital property subject to distribu-

tion. The court awarded the plaintiff "50 percent of [the defendant's] remaining unvested Springworks stock, or 91,656 unvested shares, and 60 percent . . . of 14,097 stock options dated March 29, 2019, and 60 percent of his 94,302 stock options dated April 22, 2019 . . . more specifically 8458 and 56,581." The court further ordered that, if the defendant's employment with Springworks terminated before all of the unvested shares or stock options to which he was entitled pursuant to his employment agreement vested, "then there shall be a rebuttable presumption that any employment that the defendant subsequently obtains with a new employer includes compensation to the defendant for his Springworks shares and/or options, and the defendant shall be obligated to pay to the plaintiff an amount equal to the value of the plaintiff's interest in the [unvested] Springworks shares and/or options as if they had vested in full." This appeal followed. Additional facts will be set forth as necessary.

"The standard of review in domestic relations cases is well established. [T]his court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law. . . . The question of whether, and to what extent, the child support guidelines apply, however, is a question of law over which this court should exercise plenary review." (Citations omitted; internal quotation marks omitted.) *Zheng* v. *Xia*, 204 Conn. App. 302, 309, 253 A.3d 69 (2021); see also *Dowling* v. *Szymczak*, 309 Conn. 390, 399, 72 A.3d 1 (2013). Furthermore, although the trial court is vested with broad discretion in domestic relations matters, with respect to child support, "the parameters of the court's discretion have been somewhat limited by the factors set forth in the child support guidelines." (Internal quotation marks omitted.) *Colbert* v. *Carr*, 140 Conn. App. 229, 240, 57 A.3d 878, cert. denied, 308 Conn. 926, 64 A.3d 333 (2013).

I

On appeal, the defendant claims that the court erred in crafting its child support orders. Specifically, the defendant claims that the court improperly (1) calculated his basic child support obligation by failing to allocate properly the total amount of child support among the parties as required by the child support

guidelines, (2) deviated from the child support guidelines without making the requisite findings, and (3) ordered an open-ended, uncapped percentage based supplemental child support award. We agree with all of the defendant's claims.

We begin with the child support guidelines; Regs., Conn. State Agencies § 46b-215a-1 et seq.; and our case law interpreting the guidelines. General Statutes § 46b-84 provides in relevant part: "(a) Upon or subsequent to the . . . dissolution of any marriage . . . the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance. Any post judgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of child support. . . .

"(d) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child. . . ."

General Statutes § 46b-215a provides for a commission to oversee the establishment of child support guidelines, which must be updated every four years, "to ensure the appropriateness of criteria for the establishment of child support awards." General Statutes § 46b-215b provides in relevant part: "(a) The . . . guidelines issued pursuant to section 46b-215a . . . and in effect on the date of the support determination shall be considered in all determinations of child support award amounts . . . . In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount to be ordered. A specific finding on the record at a hearing, or in a written judgment, order or memorandum of decision of the court, that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under the deviation criteria established by the Commission for Child Support Guidelines under section 46b-215a, shall be required in order to rebut the presumption in such case." See also *Maturo* v. *Maturo*, 296 Conn. 80, 118, 995 A.2d 1 (2010) ("[t]he . . . guidelines shall be considered in *all* determinations of child support amounts within the state" (emphasis in original; internal quotation marks omitted)).

The guidelines consist of "the rules, schedule and worksheet established under [the applicable sections] of the Regulations of Connecticut State Agencies for

the determination of an appropriate child support award . . . ." Regs., Conn. State Agencies § 46b-215a-1 (5). The guidelines are accompanied by a preamble that is not part of the regulations but is intended to assist in their interpretation. See Child Support and Arrearage Guidelines (2015), preamble. The preamble states that the primary purpose of the guidelines is "[t]o provide uniform procedures for establishing an adequate level of support for children"; id., § (c) (1), p. v; and "[t]o make awards more equitable by ensuring the consistent treatment of persons in similar circumstances." Id., § (c) (2), p. v.

Moreover, "[§] 46b-215a-5c (a) of the Regulations of Connecticut State Agencies provides in relevant part: 'The current support . . . contribution amounts calculated under [the child support guidelines] . . . are presumed to be the correct amounts to be ordered. The presumption regarding each such amount may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case. . . . Any such finding shall state the amount that would have been required under such sections and include a factual finding to justify the variance. Only the deviation criteria stated in . . . subdivisions (1) to (6), inclusive, of subsection (b) of this section . . . shall establish sufficient bases for such findings.'[7]

"Our courts have interpreted this statutory and regulatory language as requiring three distinct findings in order for a court to properly deviate from the child support guidelines in fashioning a child support order: (1) a finding of the presumptive child support amount pursuant to the guidelines; (2) a specific finding that application of such guidelines would be inequitable and inappropriate; and (3) an explanation as to which deviation criteria the court is relying on to justify the deviation." (Footnote added; footnote omitted.) *Righi* v. *Righi*, 172 Conn. App. 427, 436–37, 160 A.3d 1094 (2017).

In *Dowling* v. *Szymczak*, supra, 309 Conn. 390, our Supreme Court provided clear guidance for determining child support obligations in high income situations. The court explained that "the schedule sets forth a presumptive percentage and resultant amount corresponding to specific levels of combined net weekly income; the schedule begins at $50 and continues in progressively higher $10 increments, terminating at $4000. . . . This court has recognized that the guidelines nonetheless apply to combined net weekly income in excess of that maximum amount. . . . Indeed, the regulations direct that, [w]hen the parents' combined net weekly income exceeds [$4000], child support awards shall be determined on a case-by-case basis, and the current support prescribed at the [$4000] net weekly income level shall be the minimum presumptive amount. . . .

"While the regulations clearly demarcate the pre-

sumptive minimum amount of the award in high income cases, they do not address the maximum permissible amount that may be assigned under a proper exercise of the court's discretion. . . . [T]his court has remained mindful that the guidelines . . . indicate that such awards should follow the principle expressly acknowledged in the preamble [to the guidelines] and reflected in the schedule that the child support obligation as a percentage of the combined net weekly income should decline as the income level rises. . . . We therefore have determined that child support payments . . . should presumptively not exceed the [maximum] percent [set forth in the schedule] when the combined net weekly income of the family exceeds $4000, and, in most cases, should reflect less than that amount. . . .

"Either the presumptive ceiling of income percentage or presumptive floor of dollar amount on any given child support obligation, however, may be rebutted by application of the deviation criteria enumerated in the guidelines and by the statutory factors set forth in § 46b-84 (d). . . . In order to justify deviation from this range, the court must first make a finding on the record as to why the guidelines were inequitable or inappropriate . . . . Thus, this court unambiguously has stated that, when a family's combined net weekly income exceeds $4000, the court should treat the percentage set forth in the schedule at the highest income level as the presumptive ceiling on the child support obligation, subject to rebuttal by application of the deviation criteria enumerated in the guidelines, as well as the statutory factors described in § 46b-84 (d)." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 400–402; see also Regs., Conn. State Agencies § 46b-215a-2c (a) (2).[8]

The guidelines also permit courts, in appropriate cases, to enter "a supplemental order . . . to pay a percentage of a future lump sum payment, such as a bonus. Such supplemental orders shall be entered when a specific dollar amount of the future lump sum payment has not been ordered and such payment is of an indeterminate amount, subject to clauses (i) and (ii) in this subparagraph . . . (ii) for combined net weekly incomes over $4000, the order shall be determined on a case by case basis consistent with applicable statutes." Regs., Conn. State Agencies § 46b-215a-2c (c) (1) (B). "A supplemental order treats the unknown future lump sum payment separately from the basic current support order and is intended to account only for those instances in which the parties have knowledge of an anticipated future lump sum payment of an unknown amount, such as a bonus." (Internal quotation marks omitted.) *Gentile* v. *Carneiro*, 107 Conn. App. 630, 643, 946 A.2d 871 (2008).

The following additional facts and procedural history are relevant to the defendant's claims. The court

awarded the parties joint legal custody of their two children and granted the plaintiff primary physical custody of them. The court consequently turned to the calculation of the defendant's child support obligation. Because the plaintiff was not employed, the court first calculated the basic child support range using only the defendant's income. The court, relying on the defendant's net weekly base salary from Springworks plus the weekly income he receives from his 25 percent interest in a real estate investment, determined that the parties' joint net weekly income, assuming no income for the plaintiff, was $4630. In calculating basic child support, the court did not consider any bonuses the defendant might receive from Springworks, which the court described as both "a maximum annual cash bonus of 30 percent" and "an annual cash bonus capped at 30 percent of the [defendant's] base salary." The court stated that it would "use the defendant's net weekly income from any bonuses and other sources to calculate a supplemental child support obligation as a percentage of all other income."

Because the combined income the court calculated for the purpose of basic child support was greater than $4000, the court, using the guidelines, calculated a range of basic child support, the low end of which was the "dollar amount shown [in the guidelines] at the $4000 level for two children" and the high end of which was "the percentage amount at that level for two children, i.e., 17.71 percent." Using this methodology, the court calculated a range of basic child support between $708 and $820 per week.

The court then concluded that it should deviate from the guidelines because the plaintiff has an earning capacity of "$40,000 gross per annum." The court, in light of the plaintiff's earning capacity, found "that it would be inequitable and inappropriate to award the presumptive amount." The court then added the plaintiff's earning capacity to the defendant's net weekly income of $4630 to arrive at a new combined weekly "income" of $5390. The court then used the same methodology it had originally used in applying the guidelines to determine a basic child support range. The bottom of the range remained at $708 per week, but the top of the range increased to "$955 per week (17.71 [percent] of $5390)." Rather than adjusting the defendant's basic child support obligation downward from the original range it had calculated to account for the plaintiff's earning capacity, the court "in its discretion" ordered the defendant to pay weekly basic child support of $1000, which the court described as "a deviation of less than 5 percent." The court further ordered the defendant to "make a weekly supplemental child support payment equal to 17.71 percent of the after-tax amounts of any bonuses and other income."

A

The defendant first claims that the court abused its discretion in calculating his child support obligation by increasing, rather than reducing, his obligation based on the plaintiff's earning capacity. We agree.

The child support guidelines set forth a worksheet that provides specific instructions for calculating child support. The worksheet explains that "each parent's share of the basic child support obligation is determined by calculating each parent's share of the combined net weekly income . . . and multiplying the result for each parent by the basic child support obligation." Regs., Conn. State Agencies § 46b-215a-2c (a) (4). The guidelines specifically provide that the court should: "(B) Determine each parent's percentage share of the combined net weekly income by dividing the [net weekly income] amount for each parent by the [total combined net weekly income] and multiplying by one hundred percent. . . . (C) Multiply [the amount as calculated in (B), rounded to the nearest whole percentage] for each parent by the [basic child support obligation (from the Schedule of Basic Child Support Obligations)]. . . . These amounts are each parent's share of the basic child support obligation." Id., § 46b-215a-2c (a) (4).

Accordingly, the child support guidelines specifically contemplate that the noncustodial parent's basic child support obligation will account for each party's pro rata share of child support as calculated by the guidelines. Put another way, the noncustodial parent's child support obligation should not reflect the parties' total child support obligation as calculated by the guidelines, but only each parent's pro rata share of the total.

The plaintiff does not dispute that this pro rata methodology must be followed when the child support calculations are based on both parties' income. Rather, she argues: "Unlike the calculation of the presumptive amount of support based on income, § 46b-215a-5c (b) (1) (B) [of the regulations], which delineates earning capacity as a deviation criterion, does not direct the court in how that deviation criteria should be applied. Consequently, the court, in exercising its discretion afforded by the deviation criteria and § 46b-84 (d), was not . . . bound by the presumptive amount of support pursuant to the guidelines." We are not persuaded.

We recognize that "[i]t is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards [pursuant to General Statutes §§ 46b-82 (a) and 46b-86] on the earning capacity of the parties rather than on actual earned income." (Footnote omitted; internal quotation marks omitted.) *Tanzman* v. *Meurer*, 309 Conn. 105, 113–14, 70 A.3d 13 (2013). "A party's earning capacity is a deviation criterion under the guidelines, and, therefore, a court must specifically invoke the criterion and specifically explain its justification for calculating a

party's child support obligation by virtue of the criterion instead of by virtue of the procedures outlined in the guidelines." *Fox* v. *Fox*, 152 Conn. App. 611, 633, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014).

In the present case, the defendant asked the court to deviate from the guidelines because the plaintiff had engineering degrees from a prestigious university and, hence, a significant earning capacity. Thus, the defendant sought to reduce his child support obligation, which otherwise would be based solely on his income, by considering the plaintiff's ability to earn income to contribute to the financial support of their children. The court, after hearing testimony regarding the plaintiff's earning capacity, found that the plaintiff had a gross earning capacity of approximately $40,000 per year. The court further found "that it would be inappropriate and inequitable to perform the child support calculations with no income attributed to the plaintiff." Given these findings, the expected outcome would be that the court deviate from the guidelines downward to calculate the defendant's basic child support obligation. Applying the principles behind the guidelines, once the court decided to factor in the plaintiff's earning capacity to determine the parties' child support obligations, it should have assigned at least a portion of the joint obligation to the plaintiff based on her earning capacity. In fact, the record reflects that, after the court found that the plaintiff had an earning capacity of $40,000 per year, it treated that figure as income to recalculate the parties' joint child support obligations. When including this additional "income" in its calculation, it increased the parties' joint basic child support obligation under the guidelines from $820 per week to $955 per week. Rather than determining each party's pro rata share of that amount, however, the court simply assigned the entire child support obligation to the defendant.

Although the court was permitted to deviate from the guidelines to consider the plaintiff's earning capacity, its application of the deviation in this case was inconsistent with its reason for the deviation and inconsistent with the principles on which the guidelines are based. Consequently, the court abused its discretion in the way it determined the defendant's basic child support obligation given its findings that the plaintiff had an earning capacity of $40,000 per year and that it would be inappropriate and inequitable not to consider that earning capacity when calculating the parties' basic child support obligations.

B

The defendant next claims that the court "compounded [its calculation error] by deviating upward yet again, this time based only on [its] 'discretion.'" In particular, the defendant claims that the court failed to provide a justification for its departure from the top end of its recalculated basic child support range of $955

per week to the $1000 per week it ordered the defendant to pay. As noted previously in this opinion, the court used the plaintiff's earning capacity and the defendant's income to calculate a support range of $708 to $955 per week. After assigning this entire support obligation to the defendant, the court ordered the defendant to pay an amount above the upper end of the range, stating: "In its discretion, the court orders the defendant to pay $1000 per week as basic child support, a deviation of less than 5 percent." As a result, the defendant's child support obligation was approximately 21.6 percent of his net weekly income, 3.89 percent above the presumptive ceiling of 17.71 percent set forth in the guidelines.[9]

The court stated that "[t]he $45 difference between the calculated high end of the guideline amount for a family that exceeds the $4000 per week net combined income represents a 5 percent increase over the $955 amount. The court has the discretion to increase or decrease the calculated amount as long as it does not exceed 15 percent of the original order amount." The defendant argues that the court had no such discretion, in the absence of a finding—which the court did not make—that the deviation is justified by one of the deviation criteria set forth in § 46b-215a-5c (b) of the regulations. The plaintiff argues that the court's finding that her earning capacity warranted a departure from the guidelines supports the upward deviation in the court's basic child support order. We conclude that the court's second upward deviation, in the absence of a finding that it was justified by one of the regulatory criteria, was in error.

First, it appears that when the court stated that it had the discretion to increase or decrease the presumptive basic child support amount, so long as it did not exceed 15 percent of that amount, it was relying on § 46b-86, governing modification of alimony and child support orders, which provides in relevant part: "There shall be a rebuttable presumption that any deviation of less than fifteen percent from the child support guidelines is not substantial and any deviation of fifteen percent or more from the guidelines is substantial. . . ." General Statutes § 46b-86 (a). Section 46b-86, however, is not applicable to the present case, in which the court was entering the initial child support award. That a certain deviation from the child support guidelines is not "substantial," such that it may justify a *modification* of child support, does not mean the court may disregard the guidelines when ordering an *initial* child support obligation.

Second, § 46b-215a-5c (a) of the regulations provides in relevant part: "The current support . . . contribution amounts calculated under [the child support guidelines] . . . are presumed to be the correct amounts to be ordered. The presumption regarding each such amount may be rebutted by a specific finding on the

record that such amount would be inequitable or inappropriate in a particular case. . . . Any such finding shall state the amount that would have been required under such sections and include a factual finding to justify the variance. Only the deviation criteria stated in . . . subdivisions (1) to (6), inclusive, of subsection (b) of this section . . . shall establish sufficient bases for such findings." It is firmly established that "when a family's combined net weekly income exceeds $4000, the court should treat the percentage set forth in the schedule at the highest income level as the presumptive ceiling on the child support obligation, subject to rebuttal by application of the deviation criteria enumerated in the guidelines, as well as the statutory factors described in § 46b-84 (d)." *Maturo* v. *Maturo*, supra, 296 Conn. 106. Our case law makes clear that said criteria must be explicitly stated in the court's analysis. See *Zheng* v. *Xia*, supra, 204 Conn. App. 311 ("*any* deviation from the schedule or the principles on which the guidelines are based must be accompanied by the court's explanation as to why the guidelines are inequitable or inappropriate and why the deviation is necessary to meet the needs of the child" (emphasis added; internal quotation marks omitted)); see also *Fox* v. *Fox*, supra, 152 Conn. App. 633. Thus, for the court to deviate as it did, it was required to make three distinct findings: "(1) a finding of the presumptive child support amount pursuant to the guidelines; (2) a specific finding that application of such guidelines would be inequitable and inappropriate; and (3) an explanation as to which deviation criteria the court is relying on to justify the deviation." *Righi* v. *Righi*, supra, 172 Conn. App. 436–37. A court's failure to substantiate its decision to adjust the presumptive basic child support order by making the explicit findings in the record that are expressly required by the guidelines constitutes an incorrect application of the law and, therefore, an abuse of discretion. See *Unkelbach* v. *McNary*, 244 Conn. 350, 367, 710 A.2d 717 (1998); see also *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 366, 370, 999 A.2d 721 (2010) (trial court abused its discretion in awarding child support when it did not make finding on record as to why guidelines were inequitable or inappropriate and its application of deviation criteria was improper); *Maturo* v. *Maturo*, supra, 296 Conn. 89, 99–101 (same); *Zheng* v. *Xia*, supra, 204 Conn. App. 308, 312 (trial court abused its discretion when its reason for deviating from child support guidelines failed as matter of law and court made no other specific finding as to why child support guidelines were inequitable and inappropriate).

In the present case, although the court made a finding of the presumptive child support amount and stated that the plaintiff's earning capacity justified an upward deviation in the defendant's basic child support obligation to $955 per week, it did not make a specific finding to justify its further increase of the defendant's obliga-

tion to $1000 per week. Aside from referencing its "discretion," the court failed to provide an explanation as to which deviation criteria it was relying on to justify its second upward deviation from $955 to $1000 per week. Therefore, we conclude that the court abused its discretion when it ordered the defendant to pay the plaintiff $1000 per week as basic child support without making the required findings.

Finally, we are unpersuaded by the plaintiff's argument that the court's finding that her earning capacity warranted a deviation from the guidelines was sufficient to justify any departure from the revised guideline amount of $955 per week to $1000 per week. First, for the reasons set forth in part I A of this opinion, use of the plaintiff's earning capacity to increase the defendant's child support obligation is illogical. Second, the court did not base its upward deviation from $955 to $1000 on the plaintiff's earning capacity. The plaintiff's earning capacity was used only to justify a departure from the guidelines from the top end of the range of $820 per week to $955 per week. The court's further adjustment to $1000 per week appears to be based on the court's erroneous reliance on § 46b-86.

C

The defendant next claims that the court improperly ordered "an open-ended, uncapped percentage based supplemental child support award." In particular, the defendant claims that the order "conflicts with [our] Supreme Court's holding in *Maturo* v. *Maturo*, [supra, 296 Conn. 108] that . . . a supplemental award 'must be capped at a sum bearing some rational relation to the "estate and needs of the child." ' " (Emphasis omitted.) The plaintiff disagrees, claiming that the court followed the applicable guidelines in ordering the defendant to pay 17.71 percent of his net bonus, which was capped at 30 percent of his annual salary.

Our review of the record and applicable principles leads us to conclude that the court's supplemental child support order, awarding the plaintiff 17.71 percent of the defendant's undetermined future income above his base salary, was based on a clearly erroneous finding and otherwise was in error.

1

In adjudicating child support cases, our courts have been reminded to avoid wealth transfers when awarding child support. In *Maturo*, for example, our Supreme Court expressly warned against wealth transfers or disguised alimony awards, explaining that "[t]he effect of unrestrained child support awards in high income cases is a potential windfall that transfers *wealth* from one spouse to another or from one spouse to the children under the guise of child support." (Emphasis in original.) *Maturo* v. *Maturo*, supra, 296 Conn. 105.

In *Maturo*, the dissolution court awarded a supple-

mental child support award of 20 percent of the defendant's indeterminate annual bonus but failed to provide any justification related to the needs of the children. Id., 88–89. Our Supreme Court determined that it was error for the dissolution court to fail to provide "any explicit justification for the award of bonus income that was related to the financial *or* nonfinancial needs or characteristics of the children under . . . § 46b-84 (d) . . . . In fact, there is no evidence that the court considered *anything* other than the defendant's income and earning capacity in making the child support award. Thus, absent a finding as to how the additional funds would be used for the benefit of the children and how the award was related to the factors identified in § 46b-84 (d), we conclude that the court exceeded its legitimate discretion." (Emphasis in original.) Id., 103.

Further, in *Maturo*, our Supreme Court distinguished between two types of bonus income, stating: "[W]hen there is a proven, routine consistency in annual bonus income, as when a bonus is based on an established percentage of a party's steady income, an additional award of child support that represents a percentage of the net cash bonus also may be appropriate if justified by the needs of the child. When there is a history of wildly fluctuating bonuses, however, or a reasonable expectation that future bonuses will vary substantially . . . an award based on a fixed percentage of the net cash bonus is impermissible *unless* it can be linked to the child's characteristics and demonstrated needs." (Emphasis in original.) Id., 106.

In the present case, the defendant does not dispute that his bonus income should be considered in determining his child support obligation. He also does not argue that the court should not have ordered any supplemental child support order tied to his bonuses and additional income. Rather, he claims that the court improperly entered an open-ended supplemental order without making any findings that the order was related to the characteristics and needs of the children.

The court ordered the defendant to pay the plaintiff "a supplemental child support amount equal to 17.71 percent of all after-tax income from bonuses and other sources, pursuant to the provisions of . . . § 46b-84." Because the parties' combined net weekly income, using the defendant's base salary income alone, exceeded $4000, it was within the court's discretion to make a supplemental order with respect to income of an indeterminate amount, as such orders in cases in which the net weekly income exceeds $4000 are to be determined on a case-by-case basis. See Regs., Conn. State Agencies § 46b-215a-2c (c) (1) (B) (ii). In addition, the percentage used, 17.71, was consistent with that called for in the schedule for net weekly incomes greater than $4000.

The court, however, failed to provide any explicit

justification for the award of bonus income that was related to the financial or nonfinancial needs or characteristics of the children under § 46b-84 (d). The court simply stated that the supplemental award was "pursuant to the provisions of . . . § 46b-84." Therefore, in the absence of a finding as to how the additional funds would be used for the benefit of the children and how the award was related to the factors identified in § 46b-84 (d), we conclude that the court exceeded its legitimate discretion. See *Maturo* v. *Maturo*, supra, 296 Conn. 103; see also *Barcelo* v. *Barcelo*, 158 Conn. App. 201, 217, 118 A.3d 657 ("[w]e conclude that the court erred by failing to make explicit findings as to how the additional funds would benefit the children and how the supplemental award was related to the factors identified in § 46b-84 (d)"), cert. denied, 319 Conn. 910, 123 A.3d 882 (2015).

The plaintiff argues that, to the extent that our Supreme Court's decisions in *Maturo* and *Dowling* precluded open-ended supplemental child support orders, they have been superseded by the 2015 amendments to the guidelines. She notes that the preamble to the amended guidelines specifically provides in relevant part: "In recognition of recent Supreme and Appellate Court case law addressing households with combined net weekly income of over $4,000 and further in recognition of the lack of sufficient economic data, courts should exercise their discretion consistent with the income scope as set forth in [§] 46b-215a-2c (a) (2) [of the regulations] on a case by case basis where the combined income exceeds the range of the schedule. When the combined net weekly income exceeds $4,000, the presumptive support amount shall range from the dollar amount at the $4,000 level to the percentage amount at that level applied to the combined net weekly income consistent with statutory criteria, including [General Statutes] § 46b-84 (d). . . . In exercising discretion in any given case, the magistrate or trial judge should consider evidence submitted by the parties regarding actual past and projected child support expenditures to determine the appropriate order." Child Support and Arrearage Guidelines (2015), preamble, § (e) (5), p. ix. She further relies on § (b) (6) of the preamble, which provides: "Future income of unknown amounts such as bonuses and other incentive based compensation that is awarded in future years, or vests in future years, or can be exercised in future years, is required to be part of the child support award to be included in the award for the year in which such amounts are includible in income for tax purposes through the use of supplemental orders." Id., § (b) (6), p. iii.

The plaintiff argues that the preamble makes clear that the commission was fully aware of *Maturo* and *Dowling* when it revised the guidelines, and "[t]hat the commission declined to include a requirement for a cap

. . . indicates that the commission concluded such [a requirement was] not necessary to accomplish the purpose of the guidelines." She further argues that the court precisely followed the direction in the preamble by including the defendant's unknown future bonuses in the supplemental order. We are not persuaded.

We agree with the plaintiff that, as to high income families, the current guidelines no longer follow the principle that the percentage of family income expected to be spent on childcare declines as income rises. As to that general principle, which the guidelines still follow for families with income less than $4000 per week, the preamble to the guidelines provides: "[T]he commission [has] no economic data that supports a conclusion that this pattern continues when parents' net weekly income exceeds $4,000. This commission therefore decided to not extend either the range of the schedule or the application of the concept of declining percentages beyond its current $4,000 upper limit." Child Support Arrearage Guidelines (2015), preamble, § (d), p. vi. Thus, the trial court was not required, as the defendant suggests, to use a declining percentage in calculating the defendant's supplemental support obligation. As noted previously in this opinion, the court had the discretion to enter a supplemental order based on the applicable percentage of 17.71 percent. Nevertheless, the issue is not the amount awarded in the court's order but, instead, the court's failure to provide an explicit justification for entering it as required by *Maturo*. See *Maturo* v. *Maturo*, supra, 296 Conn. 103.

There is no indication that the commission intended to overrule *Maturo*'s statutory analysis that was the basis of its requirement that the court must make explicit findings of the connection between the supplemental order and the needs and characteristics of the children. To the contrary, the commission stated that it was providing guidance "[i]n recognition" of recent cases from the Supreme Court and this court. See Child Support Arrearage Guidelines (2015), preamble, § (e) (5), p. ix. We acknowledge that "[t]he task of promulgating provisions to cover [high income] situation[s] lies with the legislature or its commission, [and] not with the court." (Internal quotation marks omitted.) *Dowling* v. *Szymczak*, supra, 309 Conn. 402. Indeed, as the court noted in *Dowling*: "It may be that the commission, which updates the guidelines every four years . . . will account for the exceptionally affluent families in this state in future revisions to the guidelines. Until that day, however, the uppermost multiplier will provide the presumptive ceiling that will guide the trial courts in determining an appropriate child support award 'on a case-by-case basis'; Regs., Conn. State Agencies § 46b-215a-2b (a) (2); without the need to resort to deviation criteria. We underscore, however, that, in exercising discretion in any given case, the magistrate or trial court should consider evidence submitted by the parties

regarding actual past and projected child support expenditures to determine the appropriate award, with due regard for the principle that such expenditures generally decline as income rises." (Emphasis omitted; citations omitted.) *Dowling* v. *Szymczak*, supra, 402–403.

It appears that the commission, in response to *Maturo* and *Dowling*, studied whether the principle that expenditures generally decline as income rises applied with respect to high income families, and concluded that it did not. Consequently, the commission provided that explicit guidance in the preamble to the guidelines. Significantly though, the commission did nothing to suggest that trial courts do not need to make the explicit finding as to the needs of the children required by *Maturo*. Furthermore, the guidelines require that any supplemental order be "consistent with applicable statutes." Regs., Conn. State Agencies § 46b-215a-2c (c) (1) (B) (ii). In *Maturo*, our Supreme Court premised its conclusion that a supplemental child support order must be tied to the needs of the child on § 46b-84 (d), which requires a court to "consider various characteristics and needs of the child in determining whether support is required, the amount of support to be awarded and the respective abilities of the parents to provide such support." *Maturo* v. *Maturo*, supra, 296 Conn. 95. There is nothing in the current guidelines that suggests that the commission disagreed with the Supreme Court's interpretation of § 46b-84 (d) when it required that any supplemental child support order be consistent with applicable statutes.

Consequently, the court abused its discretion in issuing its supplemental child support order without making an explicit finding connecting it to the characteristics or needs of the children.[10]

2

The defendant also claims that the court's finding that the defendant's eligibility for an annual cash bonus was "capped" at 30 percent of his base salary is clearly erroneous. The defendant argues that this finding "clearly infected [the court's] alimony and child support supplemental award[s]" and, accordingly, those supplemental orders must be reversed. The plaintiff argues that there is sufficient evidence in the record to support the court's conclusion that the defendant's "eligibility for an annual cash bonus [was] capped at 30 percent of his base salary," and therefore the supplemental award was not uncapped. We agree with the defendant.

"[T]his court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts." (Internal quotation marks omitted.) *Zheng* v. *Xia*, supra, 204 Conn. App. 309. "The trial court's findings [of fact] are binding upon this court unless they are clearly errone-

ous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Budrawich* v. *Budrawich*, 200 Conn. App. 229, 246, 240 A.3d 688 (2020), cert. denied, 336 Conn. 909, 244 A.3d 561 (2021).

It is clear from the court's reasoning that the defendant's "capped" bonus was a factor it considered in crafting the child support order. In determining the defendant's income, the court stated: "The defendant's income is a little more complicated to calculate. As previously stated, he is presently employed by Springworks . . . . *His base salary for 2019 is $403,650 and he is eligible to receive a maximum annual cash bonus of 30 percent. . . .* The court will use the defendant's net weekly income from any bonuses and other sources to calculate a supplemental child support obligation as a percentage of all other income." (Emphasis added.) In describing the defendant's income, the court also described his bonus from Springworks as "capped at 30 percent of his base salary." The court then ordered "[t]he defendant [to] pay to the plaintiff a base child support amount of $1000 per week for the two minor children, plus a supplemental child support amount equal to 17.71 percent of all after-tax income from bonuses and other sources, pursuant to the provisions of . . . § 46b-84." (Footnote omitted.)

Affording the appropriate deference to the court's findings of fact, we conclude that there was no evidence in the record to support the court's finding that the defendant's annual cash bonus was capped at 30 percent of his base salary. The defendant's employment contract with Springworks stated: "You will be eligible to receive an annual performance bonus. The Company will *target* the bonus at up to 30 [percent] of your annual salary rate. The actual bonus percentage is discretionary and will be subject to the Company's assessment of your performance, as well as the business conditions at the company. The bonus will also be subject to your employment for the full period covered by the bonus, approval by and adjustment at the discretion of the Company's board of directors and the terms of any applicable bonus plan. . . . *The Company also may make upward adjustments in the targeted amount of your annual performance bonus.*" (Emphasis added.)

There was no further evidence or testimony contradicting the employment contract. Accordingly, the court's factual finding that the defendant's annual bonus was "capped at 30 percent of his base salary" conflicts with the only evidence on the issue. Thus, the finding

was clearly erroneous.

Therefore, the court's supplemental child support order did not have a reasonable basis in fact. We thus conclude that the supplemental child support order cannot stand.

## II

The defendant also claims that the court improperly ordered an open-ended, uncapped percentage based supplemental alimony award. Specifically, the defendant argues that the supplemental alimony award fails for the same reason the supplemental child support award fails, namely, the order was based on a clearly erroneous finding of fact.[11] We agree.

In fashioning alimony awards, the court is required to consider the criteria set forth in § 46b-82 (a), which provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment." Further, the failure to include bonuses in the determination of income is error. See *Bartel* v. *Bartel*, 98 Conn. App. 706, 712–13, 911 A.2d 1134 (2006).

In the present case, the court ordered that, "[i]n addition to the base alimony previously ordered, the defendant shall pay to the plaintiff, as supplemental alimony, 17.71 percent of all after-tax income from his employment above his base salary in any year in which he has an alimony obligation to the plaintiff." The court reasoned that "[a] period of [ten] years of alimony would assist the plaintiff to enter the work world in a meaningful way especially while the two minor children were young. A declining amount would encourage the plaintiff to seek significant employment as the children grew older and no longer needed as much daily care. A supplemental order based on bonus payments would fairly assist the plaintiff without burdening the defendant with an excessive weekly order based on amounts paid only once a year or sporadically."

As stated previously, the court's supplemental alimony award was based, at least in part, on its finding that the defendant's annual bonus was capped at 30 percent of his annual salary. For the reasons set forth in part I C 2 of this opinion, that finding was clearly erroneous. Thus, the court's supplemental alimony order did not have a reasonable basis in fact. Accord-

ingly, we conclude that the supplemental alimony order must be reversed.

### III

We turn now to the appropriate relief. "Individual financial orders in a dissolution action are part of the carefully crafted mosaic that comprises the entire asset reallocation plan. . . . Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. Consistent with that approach, our courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards. . . .

"Every improper order, however, does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order is severable if its impropriety does not place the correctness of the other orders in question." (Citations omitted; internal quotation marks omitted.) *Barcelo* v. *Barcelo*, supra, 158 Conn. App. 226–27.

"Determining whether an order is severable from the other financial orders in a dissolution case is a highly fact bound inquiry." *Tuckman* v. *Tuckman*, 308 Conn. 194, 214, 61 A.3d 449 (2013).

In the present case, we have concluded that the trial court misapplied the child support guidelines in fashioning its basic child support order and, further, that it improperly ordered supplemental child support and alimony based on an erroneous finding of fact. Given that the plaintiff was awarded ten years of alimony that included a significant supplemental alimony award, we conclude that the court's error with respect to that award is not severable from the court's property distribution. Furthermore, although this court and our Supreme Court have held that, under some circumstances, a child support award may be severable from the other financial orders; see *Blondeau* v. *Baltierra*, 337 Conn. 127, 174–75, 252 A.3d 317 (2020); *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 390; *Maturo* v. *Maturo*, supra, 296 Conn. 124–25; *Kavanah* v. *Kavanah*, 142 Conn. App. 775, 785, 66 A.3d 922 (2013); *Gentile* v. *Carneiro*, supra, 107 Conn. App. 650–51; this is not such a case. The court issued a significant supplemental child support order requiring the defendant to pay as supplemental child support 17.71 percent of any bonuses and other income. The court then used this same 17.71 percent as the basis for its supplemental alimony order. Given the potential size of the supplemental child sup-

port order and its link to the supplemental alimony order, the court's child support orders also are part of the mosaic of financial orders issued by the court. Because it is uncertain whether the court's other financial awards will remain intact after reconsidering the child support orders and the supplemental alimony order in a manner consistent with this opinion, we conclude that the entirety of the mosaic must be refashioned. See, e.g., *Tuckman* v. *Tuckman*, supra, 308 Conn. 214–15; *Finan* v. *Finan*, 287 Conn. 491, 509, 949 A.2d 468 (2008). Accordingly, on remand, the court must reconsider all of the financial orders, including the property distribution orders.

The judgment is reversed only as to all financial orders, and the case is remanded for a new trial on all financial issues; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The defendant claims that the court's property distribution orders, which classified the unvested shares and unvested stock options that the defendant received from his employer, Springworks Therapeutics, Inc. (Springworks), as marital property, were contrary to General Statutes § 46b-81 and relevant decisional law. He further claims that the court improperly created a rebuttable presumption that, should the defendant's employment at Springworks terminate, the defendant would be obligated to pay to the plaintiff an amount equal to the value of the plaintiff's interest in the Springworks shares and/or options as if they had vested in full.

[2] Because we conclude that the court erred with respect to the child support and alimony orders, we need not reach the defendant's claims related to the court's division of property orders. See part III of this opinion. Furthermore, at oral argument before this court, the defendant conceded that, should the case be remanded for a new trial on the financial orders, the question of whether the stock options were compensation for future performance or for past performance, and, therefore, whether they are properly classified as marital property, would be a question of fact for the court to consider anew. See, e.g., *Bornemann* v. *Bornemann*, 245 Conn. 508, 525, 752 A.2d 978 (1998); *Hopfer* v. *Hopfer*, 59 Conn. App. 452, 458, 757 A.2d 673 (2000). Consequently, we need not address whether the court's finding that the unvested stock options and shares were marital property to be distributed was clearly erroneous. Finally, because the defendant no longer works for Springworks, the hypothetical aspect of the property order challenged on appeal; see footnote 1 of this opinion; is unlikely to arise on remand. Therefore, we do not reach that issue.

[3] According to the defendant's testimony, which the plaintiff did not refute, the university from which the plaintiff graduated was considered the "M.I.T. of Scandinavia." The plaintiff also earned what has been characterized as a master's degree in production from the same school.

[4] Several pendente lite motions were heard in 2019. A mistrial of those motions was declared after the hearing judge was injured in an accident and was unable to issue a decision. The motions were reserved to be heard at trial. The resolution of those motions is not at issue in this appeal.

[5] After the court issued its initial memorandum of decision on January 6, 2020, the parties filed motions to reargue/reconsider the judgment. The court granted both motions and held a hearing in February, 2020. At the hearing, the court agreed with some of the issues raised and told the parties that it would issue a corrected memorandum of decision. Due to the COVID-19 pandemic and the attendant restrictions, the court did not issue its corrected memorandum of decision until December 21, 2020. In this opinion, references to the court's memorandum of decision refer to the December 21, 2020 corrected memorandum of decision.

[6] The court first determined that the parties' prenuptial agreement, which was drafted pursuant to Danish law and which was executed in Denmark, was unenforceable pursuant to the Connecticut Premarital Agreement Act, General Statutes § 46b-36a et seq. That conclusion is not challenged on appeal.

[7] The criteria enumerated in § 46b-215a-5c (b) of the regulations are: "(1) Other financial resources available to a parent . . . (2) [e]xtraordinary expenses for care and maintenance of the child . . . (3) [e]xtraordinary parental expenses . . . (4) [n]eeds of a parent's other dependents . . . (5) [c]oordination of total family support . . . [and] (6) [s]pecial circumstances . . . ."

Relevant to this appeal, a parent's earning capacity is considered part of the "[o]ther financial resources available to a parent" that would justify a deviation. See Regs., Conn. State Agencies § 46b-215a-5c (b) (1) (B).

[8] "When the parents' combined net weekly income exceeds $4,000, child support awards shall be determined on a case-by-case basis, consistent with statutory criteria, including that which is described in subsection (d) of section 46b-84 of the Connecticut General Statutes. The amount shown at the $4,000 net weekly income level shall be the minimum presumptive support obligation. The maximum presumptive support obligation shall be determined by multiplying the combined net weekly income by the applicable percentage shown at the $4,000 net income level." Regs., Conn. State Agencies § 46b-215a-2c (a) (2).

[9] As noted previously in this opinion, the upper end of the range was calculated using the percentage—17.71 percent—set forth in the guidelines for parents with a combined net weekly income exceeding $4000.

[10] In reaching this conclusion, we do not suggest that a trial court is required to engage in detailed mathematical calculations to tie every dollar of supplemental child support to some characteristic or need of the children. All that is required is an explicit finding connecting the supplemental order in some way to the children. Nevertheless, the court must do more than merely mention § 46b-84 (d). The court should discuss "how the supplemental award was related to the factors identified in § 46b-84 (d)." *Barcelo* v. *Barcelo*, supra, 158 Conn. App. 217. Pursuant to the guidelines, the court also "should consider evidence submitted by the parties regarding actual past and projected child support expenditures to determine the appropriate order." Child Support Arrearage Guidelines (2015), preamble, § (e) (5), p. ix. Although the plaintiff argues that there is evidence in the record showing that the court's entire child support order, including the supplemental order, required the defendant to pay less than what the parties collectively pay for child expenses, the court did not mention this evidence in its comprehensive memorandum of decision. Thus, we have no way of knowing if the court credited this evidence or relied on it.

[11] We note that the defendant also claims that the court's supplemental alimony award runs afoul of the principle articulated in *Dan* v. *Dan*, 315 Conn. 1, 11, 105 A.3d 118 (2014), in which our Supreme Court held that "[t]here is little, if any, legal or logical support . . . for the proposition that a legitimate purpose of alimony is to allow the supported spouse's standard of living to match the supporting spouse's standard of living *after* the divorce, when the supported spouse is no longer contributing to the supporting spouse's income earning efforts." (Emphasis in original.) *Dan*, however, is inapplicable as that case involved a modification of an alimony award, not the initial award itself.

In addition, this court has affirmed the use of supplemental alimony orders based on future earnings. See *Finan* v. *Finan*, 100 Conn. App. 297, 306, 918 A.2d 910 (2007), rev'd on other grounds, 287 Conn. 491, 949 A.2d 468 (2008); *Burns* v. *Burns*, 41 Conn. App. 716, 727–28, 677 A.2d 971, cert. denied, 239 Conn. 906, 682 A.2d 997 (1996); *Lawler* v. *Lawler*, 16 Conn. App. 193, 196–97, 547 A.2d 89 (1988), appeal dismissed, 212 Conn. 117, 561 A.2d 128 (1989). Therefore, this claim is without merit.