******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ANGHAM ZAKKO *v.* LAITH KASIR
(AC 44440)

Alvord, Alexander and Harper, Js.

*Syllabus*

The defendant appealed to this court from the trial court's order awarding, inter alia, $15,000 in attorney's fees to the plaintiff. Following the dissolution of the parties' marriage, the trial court granted the plaintiff's motion to open the judgment of dissolution as to financial matters only on the ground of mutual mistake in connection with the defendant's failure to disclose information related to a certain disability policy. Thereafter, the plaintiff filed a motion for pendente lite alimony and attorney's fees. During the hearing on the motion, the plaintiff submitted a financial affidavit that listed liabilities totaling $91,094, including $47,105 in outstanding loans from family members. In addition, evidence was presented as to whether the funds given to the plaintiff by her family members were loans or gifts and as to the plaintiff's access to nearly $30,000 in a bank account jointly held with her son. The trial court concluded that an award of $15,000 in attorney's fees to the plaintiff was warranted because, in light of her claimed debts, the plaintiff lacked ample liquid funds to pay for an attorney. In reaching its decision, the court raised, but did not resolve, the question of whether the funds from the plaintiff's family members constituted loans or gifts. *Held*:

1. The trial court abused its discretion in awarding the plaintiff attorney's fees; given the evidence before it, it was not reasonable for that court to conclude that the plaintiff lacked ample liquid funds to pay for her attorney's fees after it expressly declined to determine whether the funds that the plaintiff received from family members were, in fact, loans.

2. The trial court, in making its award of attorney's fees, expressly relied on the clearly erroneous factual finding that the plaintiff had access to only $3000 in bank accounts, which undermined this court's confidence in that court's fact-finding process and, therefore, could not be deemed harmless error; although the plaintiff testified that she did not wish to withdraw funds from the account that she held jointly with her son, that did not negate the fact that she expressly testified that she had access to the nearly $30,000 in that account.

Argued November 15, 2021—officially released January 4, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Hon. Edward J. Dolan*, judge trial referee, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court granted the plaintiff's motion to open the judgment; subsequently, the court, *Abery-Wetstone, J.*, granted the plaintiff's motion for pendente lite alimony and attorney's fees and issued a certain order, and the defendant appealed to this court. *Reversed in part*; *judgment directed*.

*David A. McGrath*, for the appellant (defendant).

*Opinion*

ALVORD, J. In this domestic relations matter, the defendant, Laith Kasir, appeals from the trial court's order awarding, inter alia, $15,000 in attorney's fees to the plaintiff, Angham Zakko. The defendant claims that, in ordering him to pay attorney's fees, the trial court made a clearly erroneous factual finding and abused its discretion. We agree with the defendant and, therefore, reverse in part the judgment of the trial court.[1]

The following facts and procedural history are relevant to our resolution of this appeal. On April 5, 2016, the court, *Hon. Edward J. Dolan*, judge trial referee, rendered judgment dissolving the parties' marriage. The parties' separation agreement (agreement) was incorporated into the judgment of dissolution. The agreement divided the marital property and provided that the defendant would pay the plaintiff alimony.[2] On March 22, 2019, the plaintiff filed a motion to open the judgment, alleging that "the judgment was secured by fraud on the part of the defendant," or, in the alternative, "the judgment was obtained by the mutual mistake of the parties regarding the defendant's income and assets." In her memorandum of law in support of her motion, the plaintiff asserted that the defendant had failed to disclose information related to a MassMutual disability policy. After a hearing, the court issued an order opening the judgment of dissolution with respect to financial orders only on the basis of mutual mistake.[3]

On December 4, 2019, the plaintiff, acting in a self-represented capacity, moved "pursuant to Connecticut General Statutes after consideration of the parties' respective financial abilities and the criteria set forth in the General Statutes [for] a reasonable amount of attorney's fees to be determined by the court and to be able to supplement the request if additional legal work is required to reach a just and fair outcome as the [p]laintiff has been through unjust financial hardship with no fault of hers." On March 5, 2020, the court granted the motion, ordering the defendant to pay the "[p]laintiff $10,000 for attorney's fees within 30 days."

On September 8, 2020, the plaintiff filed a motion seeking pendente lite alimony and additional attorney's fees.[4] With respect to her request for attorney's fees, the plaintiff stated: "The [p]laintiff . . . hereby respectfully moves this respectful [c]ourt to award her . . . reasonable [a]ttorney's [f]ees pendente [l]ite to have the assistance of an attorney for the legal process to receive her rightful share of funds and to repair the inequitable unjust status."

Over the course of three days in October and December, 2020, the court, *Abery-Wetstone, J.*, held a remote hearing on the plaintiff's motion. On the first two days of the hearing, the plaintiff represented herself,[5] and, on the third day, she was represented by an attorney.

During the hearing, evidence was presented as to, inter alia, the plaintiff's access to bank account funds jointly held with her son and whether funds given to the plaintiff by her family were loans or gifts.

Throughout the first two days of the hearing, the plaintiff was admonished repeatedly for interrupting the court and the defendant's attorney.[6] On the second day of the hearing, the court explained to the plaintiff that "the next time you . . . interrupt [the defendant's attorney] or . . . me, I'm going to fine you $25." At one point, the court stated: "[N]o—you're interrupting me again. Do you want more fines? Close your mouth please, and listen to what I'm saying. You really need to get a lawyer, because you are not able to control yourself in this court. You are not able to ask a question. You are not able to refrain yourself from testifying when you're supposed to be doing something else. You constantly interrupt both the Court and opposing counsel." The court continued: "I don't know what else to do to stop you from doing this. This behavior . . . is not acceptable in a court of law. You are in court, even though you're on video. You're expected to be respectful. You have been horribly disrespectful to [the defendant's attorney]. You have interrupted him time and time and time again. . . . This is not a conversation. This is a court of law. . . . There is no back and forth. And you keep interrupting me." By the end of the second day of the hearing, the plaintiff had incurred $325 in fines for interrupting.

On the third and final day of the hearing, during which only closing arguments were presented, the plaintiff was represented by an attorney. In his closing remarks, the plaintiff's newly appearing attorney orally requested $25,000 in attorney's fees.[7]

At the conclusion of the hearing, the court stated: "In [their] affidavits the husband reports $150,000 from [securities] and stock as opposed to the wife's $11,000. He has over $140,000 in bank accounts whereas the wife has barely $3000 in bank accounts. I'm not including retirement assets as liquid assets because she's only 55 and she would suffer significant penalty by withdrawing that. *She's also $91,000 in debt depending on who you believe—whether the loans from family are gifts or et cetera.* There's a great discrepancy in what they're currently earning. Given the fact that the wife has been out of the work market for a significant period of time and given her age and perhaps staleness of her skills as an architect or draftsman, I'm finding that it's—her earning capacity has not been proven. She simply lacks the assets to pay an attorney. So what I'm going to do is order $15,000 in attorney's fees and pendente lite alimony in the amount of $470 per week. That's certainly not going to pay all of her expenses, but it should go in some way to assist her. And the $15,000 should be paid directly to counsel." (Emphasis added.) The court

subsequently issued a written order reflecting the oral ruling.[8] This appeal followed.

On appeal, the defendant claims that the court improperly granted the plaintiff's motion for attorney's fees. He argues, inter alia, that the court abused its discretion in awarding attorney's fees because it "indicated that it was possible that those [funds from family members] were in fact gifts, without expressly making a finding either way" and, further, erred in relying on a clearly erroneous factual finding. We agree with the defendant.

We begin with the foundational understanding that "[i]t is well entrenched in our jurisprudence that Connecticut adheres to the American rule. . . . Under the American rule, a party cannot recover [attorney's] fees in the absence of statutory authority or a contractual provision. . . . On the basis of our decisional law, we believe that the theory and thrust of the American rule pertains to the assignment of fees and costs in the family law context as well. In that context . . . [t]he court may order either party to pay [attorney's fees] . . . pursuant to General Statutes § 46b-62, and how such expenses will be paid is within the court's discretion. . . . We look, then, to the parameters of § 46b-62 to determine if the statute authorizes an award of fees to one party from the other on the basis that a party seeks judicial intervention after having failed to reach an agreement. In this inquiry, because the provisions of § 46b-62 are an exception to the common-law American rule, our teaching is that the statutory provisions must be narrowly construed." (Citations omitted; internal quotation marks omitted.) *Thunelius* v. *Posacki*, 193 Conn. App. 666, 680, 220 A.3d 194 (2019).

"In dissolution and other family court proceedings, pursuant to § 46b-62 (a), the court may order either [spouse] to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the equitable criteria set forth in [General Statutes] § 46b-82, the alimony statute." *Leonova* v. *Leonov*, 201 Conn. App. 285, 326, 242 A.3d 713 (2020), cert. denied, 336 Conn. 906, 244 A.3d 146 (2021). That statute provides in relevant part that the court "shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ." General Statutes § 46b-82. "Section 46b-62 (a) applies to postdissolution proceedings because the jurisdiction of the court to enforce or to modify its decree is a continuing one and the court has the power, whether inherent or statutory, to make allowance for fees." *Leonova* v. *Leonov*, supra, 327.

Our Supreme Court has articulated "three broad prin-

ciples by which these statutory criteria are to be applied. First, such awards should not be made merely because the obligor has demonstrated an ability to pay. Second, where both parties are financially able to pay their own fees and expenses, they should be permitted to do so. Third, where, because of other orders, the potential obligee has ample liquid funds, an allowance of [attorney's] fees is not justified." *Turgeon* v. *Turgeon*, 190 Conn. 269, 280, 460 A.2d 1260 (1983).

"[A]n award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders." *Ramin* v. *Ramin*, 281 Conn. 324, 352, 915 A.2d 790 (2007). In the present case, the court relied on the first basis in making its award, stating that the plaintiff "simply lacks the assets to pay an attorney."

The defendant contends that the court abused its discretion in awarding the plaintiff attorney's fees in light of its equivocal reference to the plaintiff's claimed debts without determining if the significant funds provided to the plaintiff by various family members constituted loans or regularly recurring gifts. We agree with the defendant.

At the outset, we set forth the applicable standard of review. "Whether to allow [attorney's] fees [pursuant to § 46b-62], and if so, in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting [attorney's] fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Pena* v. *Gladstone*, 168 Conn. App. 175, 186, 146 A.3d 51 (2016).

On her financial affidavit dated October 3, 2020, and submitted to the court on the first day of the hearing, the plaintiff listed liabilities totaling $91,094. Approximately one third of this amount, $35,763, was labeled credit card debt. The plaintiff also listed, under "Other Consumer Debt," $47,105 in loan balances. Specifically, she included eight entries, each described as "[l]oan from family member" or "[l]oan from family members," and reported dates between 2016 and 2020 as when the funds were received. During the hearing, the defendant's attorney inquired as to which family members the funds came from. First, the defendant's attorney inquired regarding the "[l]oan from family member" dated 2016 in the amount of $27,000. The plaintiff testified that the funds came "from [her] brothers," but she was "not sure" which brother. The defendant's attorney also inquired about the "[l]oan from family members" dated 2018 in the amount of $13,000. The plaintiff recalled that her brother who lived in Florida wrote that check. As to the remaining funds, each approximately

$1000, the plaintiff posited that they were provided by her son to help her pay her credit card debts. She testified that the only record she had of these monetary transactions with her family members was the checks themselves—there were no "promissory note[s]."[9] In addition, she testified that she had never made a payment on any of the purported loans, there were no repayment terms for any of the claimed loans, and, "at some point, this is going to be something I have to return."

During his closing remarks, the plaintiff's attorney argued that whether the funds from family members were loans or gifts was not relevant to the court's decision, stating: "I know there was some questioning about certainly the debt on her financial affidavit—whether those familial loans were indeed gifts. I don't think there's adequate proof before the Court on either count, but certainly I would say she's disclosed it under oath as a debt, but she clearly has at least $45,000 in credit card debt." He further stated: "But the truth is . . . that you look at her debt and she's got $90,000, and whether it was a gift or a loan by the way from her family doesn't matter, she still needed it. She didn't use this to buy a new—a new car. She has a car from 2009. She didn't use it to buy new furniture, buy anything special for herself, or even to go, as she said to you a few times in testimony, to the eye doctor. Right?"

In response, the defendant's attorney argued that the funds provided by the plaintiff's family members were not loans but were, in fact, gifts because the plaintiff would not be asked to repay them. Further, he posited that "[i]t absolutely matters if they're gifts or loans. If they are loans then they belong on her financial affidavit in the debt section. And [the plaintiff's attorney] just told us we should really focus on this debt. And if they're gifts, not only do they not belong in the financial affidavit debt section, that's a misrepresentation, but they belong as regularly recurring gifts which should be considered as a source of income."

After the attorneys' closing arguments, the court stated, with respect to the plaintiff's financial resources to pay attorney's fees: "She's also $91,000 in debt depending on who you believe—whether the loans from family are gifts or et cetera."

"A determination of what constitutes ample liquid funds . . . requires . . . an examination of the total assets of the parties at the time the award is made." (Internal quotation marks omitted.) *Hornung* v. *Hornung*, 323 Conn. 144, 170, 146 A.3d 912 (2016). This requires consideration of "the total financial resources of the parties in light of the statutory criteria." (Internal quotation marks omitted.) *Miller* v. *Miller*, 16 Conn. App. 412, 418, 547 A.2d 922, cert. denied, 209 Conn. 823, 552 A.2d 430 (1988). Such an examination naturally includes an examination of the debts and liabilities of

the parties as an individual's assets are impacted by their debts. Indeed, when a party has some savings but many liabilities with payments due, the "ampleness" of their funds is impeded. Review of a party's liabilities is proper when determining whether a party has ample liquid funds for the purposes of § 46b-62 (a). See *Fitzgerald* v. *Fitzgerald*, 190 Conn. 26, 35, 459 A.2d 498 (1983) (comparing net liquid assets with liabilities to determine if there were ample liquid funds); see also *Weiman* v. *Weiman*, 188 Conn. 232, 237, 449 A.2d 151 (1982) (concluding that trial court did not abuse its discretion in awarding attorney's fees when party's liquid assets were needed to meet future needs and were, therefore, not ample); *Pena* v. *Gladstone*, 168 Conn. App. 141, 154, 144 A.3d 1085 (2016) (considering party's liabilities in determining whether party had ample liquid funds); *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 488–89, 850 A.2d 227 (concluding that trial court did not abuse its discretion in awarding attorney's fees when plaintiff "was $43,000 in debt with only $5000 in her checking account, with her sole income being alimony in the amount of $640 per week"), cert. denied, 271 Conn. 903, 859 A.2d 562 (2004).

In the present case, we conclude that the court abused its discretion in awarding the plaintiff attorney's fees. Specifically, it was not reasonable for the court to conclude that the plaintiff lacked ample liquid funds after it expressly declined to determine whether the funds the plaintiff received from family members were, in fact, loans. The court, in reaching its decision, raised, without resolving, the material question of whether the $47,105—more than one half of the plaintiff's total claimed debt—constituted loans or gifts from family members. Indeed, although the plaintiff claimed that they were loans, she testified that she had never made a payment on any of the loans, including those dating back to 2016, that there was no repayment schedule, and that she did not know to which of her family members she owed the money. Given the evidence before it, the court, having failed to determine the validity of the plaintiff's claimed debts while also referring to the plaintiff's debt as supporting its finding that she lacked ample liquid funds, abused its discretion in awarding the plaintiff attorney's fees.

We next address the defendant's contention that the trial court relied on a clearly erroneous factual finding in awarding the plaintiff attorney's fees. "The trial court's findings are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Buehler* v. *Buehler*, 117 Conn.

App. 304, 317–18, 978 A.2d 1141 (2009). "Where . . . some of the facts found [by the court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's fact finding process, a new hearing is required." (Internal quotation marks omitted.) *Zilkha* v. *Zilkha*, 180 Conn. App. 143, 179, 183 A.3d 64, cert. denied, 328 Conn. 937, 183 A.3d 1175 (2018).

In § IV C of her financial affidavit, titled "Bank Accounts," the plaintiff reported a Bank of America account with a current balance of $29,447. She identified the account as belonging to her son; she testified, however, that she had access to the funds in the account because it was a joint account.

Thus, the court's finding that the plaintiff had access to only $3000 in bank accounts is clearly erroneous. Although the plaintiff also testified that she did not wish to withdraw funds from the account she held jointly with her son, that does not negate the fact that she expressly testified that she had access to the nearly $30,000 in that account. The court's clearly erroneous finding as to the paucity of the plaintiff's liquid assets was important and material to its decision to award her attorney's fees. See *Zilkha* v. *Zilkha*, supra, 180 Conn. App. 179. This clearly erroneous finding, which the court expressly relied on in making its award of attorney fees, undermines our confidence in the court's fact-finding process and cannot be deemed to be harmless error. See id. Therefore, the court relied on a clearly erroneous factual finding in addition to abusing its discretion in awarding the plaintiff attorney's fees.

The judgment is reversed with respect to the award of attorney's fees to the plaintiff and the case is remanded with direction to deny in part the plaintiff's motion for pendente lite alimony and attorney's fees as to attorney's fees; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The plaintiff did not file a brief in this appeal. On May 14, 2021, this court issued an order providing that this appeal would be considered solely on the basis of the defendant's brief and appendix, the record, and oral argument.

[2] The agreement provided that the defendant would pay the plaintiff alimony of "30% of his gross earned income from work until such time as [the defendant] attains the age of 65. This is currently $1,142 a week. If, prior to attaining the age of 65, [the defendant] commences receiving Veteran's Disability Income, then [the defendant's] alimony obligation shall be reduced to 30% of his gross Veteran's Disability Income plus 30% of additional earned income, if any, he may have in addition to his Veteran's Disability."

[3] The defendant subsequently filed an appeal regarding the granting of the motion to open, which was dismissed for lack of a final judgment on July 22, 2020.

[4] At the hearing on this motion for additional attorney's fees, the plaintiff asserted that the earlier award of $10,000 was for the purpose of defending the appeal of the court's order opening the judgment, which was dismissed

before the plaintiff filed a brief. See footnote 3 of this opinion. The plaintiff testified that she had $4000 remaining from the $10,000 award.

[5] At the start of the first day of the hearing, the plaintiff was represented by an attorney, who had filed a motion to withdraw. After a brief discussion on the motion, the court granted it.

[6] The court patiently reminded the plaintiff of the proper procedure and endured many interruptions before imposing any fines.

[7] Specifically, he stated: "I don't believe a specific request for [attorney's] fees was made by my client, but I would like to be clear on the record that I believe that a $25,000 award of [attorney's] fees is appropriate under the circumstances." There was no written motion filed by the attorney.

[8] The written order also provided that "[the defendant] shall pay [the plaintiff] $475/week in alimony" despite the fact that, during the hearing, the court ordered "pendente lite alimony in the amount of $470 per week." The minor discrepancy in the alimony award is not at issue in this appeal.

[9] Aside from listing the funds as debts on her financial affidavit and testifying that they were loans, the plaintiff presented no evidence as to the nature of these funds.

––––––––––––––––––––––––––