******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# Y. H. *v.* J. B.*
## (AC 45857)

Bright, C. J., and Cradle and Schuman, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court dissolving his marriage to the plaintiff and entering certain financial orders. Following a trial, the court granted the parties joint legal custody of their minor son, with the defendant having primary physical custody, and stated that "[n]either party has asked for alimony or child support, so the court will order none." The court also granted three motions for contempt filed by the plaintiff based on its conclusion that the defendant wilfully had disobeyed court orders regarding the finances of the parties' business. As a result of the contempt, the court ordered the defendant to pay the plaintiff $40,000 in attorney's fees. *Held*:

1. The trial court abused its discretion in the manner in which it addressed child support: although the trial court stated that it declined to award child support on the ground that it was not requested by either party, a review of the trial court file revealed that the defendant consistently had requested child support before, during, and after the dissolution trial as evidenced by his filing of completed child support guidelines worksheets, his compliance with trial management orders requesting child support and arrearage, and his motion for reconsideration after the court issued its memorandum of decision in which he pointed out that he had requested child support previously; moreover, even if child support had not been requested, the court improperly declined to award child support without considering the applicable statutes and child support guidelines, and did not discuss whether the parties' son was a "child . . . in need of maintenance" pursuant to the criteria set forth in the relevant statute (§ 46b-84 (d)), or make a finding on the record, as required by statute (§ 46b-215b), that the application of the guidelines would be inequitable or inappropriate as determined under the deviation criteria established by the Commission for Child Support Guidelines, and this court was left to speculate both as to the presumptive child support amount and as to whether application of the guidelines would be inequitable or inappropriate in this case; accordingly, the case was remanded for a new trial on all financial orders because it was uncertain

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

whether the court's other financial orders would remain intact after reconsidering the child support order in a manner consistent with this opinion.

2. The defendant could not prevail on his claim that the trial court abused its discretion in finding him in contempt but, to the extent the award of attorney's fees was imposed as a sanction for the defendant's contempt, the award constituted an abuse of the trial court's discretion, which entitled the defendant to a new hearing as to the appropriate sanction for his wilful violation of the court's orders: on the basis of a review of the record, the trial court reasonably could have concluded that the defendant had not complied with its orders and that his noncompliance was wilful, and, because the underlying findings were not clearly erroneous, the court properly exercised its discretion in granting the plaintiff's motions for contempt; moreover, in awarding the attorney's fees to the plaintiff, the court did not cite any evidence in the record that the $40,000 in attorney's fees related to the three motions for contempt, instead making only general statements regarding the defendant's behavior and the amount of docket entries and the needlessly disorganized trial, and, although the plaintiff requested $40,000 in attorney's fees in her proposed orders, that amount was not tied to the plaintiff's request that the court find the defendant in contempt; furthermore, because the trial court's financial orders will be reconsidered in their entirety on remand, to the extent that the award of attorney's fees was made pursuant to the statute (§ 46b-62) that provides for an award of attorney's fees in a dissolution action, the court may consider whether to award attorney's fees pursuant to § 46b-62 as part of the new financial orders.

Argued December 5, 2023—officially released April 16, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the case was tried to the court, *Moukawsher, J.*; judgment dissolving the marriage and granting certain other relief, and granting the plaintiff's motions for contempt, from which the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*J. B.*, self-represented, the appellant (defendant).

*Opinion*

BRIGHT, C. J. The self-represented defendant, J. B., appeals from the judgment of the trial court dissolving

his marriage to the plaintiff, Y. H., and entering certain financial orders.[1] On appeal, the defendant claims that the court abused its discretion (1) in declining to award him alimony and child support, (2) in its orders regarding the division of marital property, specifically, the marital home and the parties' business, and (3) in granting the plaintiff's motions for contempt and ordering him to pay $40,000 in attorney's fees to the plaintiff.[2]

[1] The plaintiff did not file a brief in this appeal. Consequently, on September 18, 2023, we issued an order stating that "the appeal will be considered on the basis of the [defendant's] brief and the record, as defined by Practice Book § 60-4, only." Although the plaintiff's counsel appeared at oral argument before this court, consistent with our order, he was not permitted to argue.

[2] The issues as set forth in this opinion are based on this court's thorough review of the defendant's brief. To the extent that the defendant's brief could be interpreted as raising issues pertaining to (1) orders issued by the trial court, *Nastri, J.*, on May 27 and June 1, 2020, regarding pendente lite custody orders and (2) orders issued by the trial court, *Nguyen-O'Dowd, J.*, on September 7, 2021 and January 12, 2022, regarding the appraisal of the marital residence and the parties' handling of the business during the pendency of the dissolution proceedings, we note that such issues are moot as they were superseded by the judgment of dissolution. See *Netter* v. *Netter*, 220 Conn. App. 491, 494–95, 298 A.3d 653 (2023) ("Pendente lite orders are temporary orders of the court that are necessarily extinguished once a final judgment has been rendered. . . . Once a final judgment has been rendered, an issue with respect to a pendente lite order is moot because an appellate court can provide no practical relief. . . . As a result, an appellate court lacks subject matter jurisdiction over a pendente lite order after the trial court has rendered a final judgment." (Internal quotation marks omitted.)).

To the extent that the defendant has attempted to raise issues other than those set forth in this opinion, we decline to review those claims as they are inadequately briefed. The defendant's brief is confusing, repetitive and disorganized. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . In addition, briefing is inadequate when it is not only short, but confusing, repetitive, and disorganized." (Internal quotation marks omitted.) *Gleason* v. *Durden*, 211 Conn. App. 416, 439, 272 A.3d 1129, cert. denied, 343 Conn. 921, 275 A.3d 211 (2022).

Because we conclude that the trial court abused its discretion in declining to award child support on the ground that it was not requested, and without considering and applying the child support guidelines, we reverse the judgment of the trial court with respect to all the financial orders and remand this case for a new trial on all financial issues. We further conclude that the court's award of attorney's fees, to the extent it was imposed as a sanction for the defendant's contempt, constituted an abuse of its discretion, which entitles the defendant to a new hearing as to the appropriate sanction for his wilful violation of the court's orders. Finally, to the extent that the award of attorney's fees was made pursuant to General Statutes § 46b-62 (a), this case must also be remanded for reconsideration in light of the new financial orders that will be issued on remand.[3]

The following facts, as found by the trial court, *Moukawsher, J.*,[4] and procedural history are relevant to our consideration of the issues raised on appeal. The plaintiff and the defendant were married on September 10, 2010. The parties' son was born in January, 2008. On January 13, 2020, the plaintiff commenced this action for dissolution of marriage, alleging that the parties' marriage had broken down irretrievably. On June 2, 2020, the defendant filed an amended answer and cross complaint. On September 8, 2022, following a trial, the court dissolved the parties' marriage. In its memorandum of decision, the court granted the parties joint legal custody of their son with the defendant having primary physical custody. The court stated, in part, that "[n]either party has asked for alimony or child

[3] Because we reverse the judgment of the trial court with respect to its financial orders and remand this case for a new trial on all financial issues, we need not address the defendant's claim that the court abused its discretion in its orders regarding alimony and the division of property.

[4] Unless otherwise indicated in this opinion, all references to the trial court are to Judge Moukawsher.

support, so the court will order none." In dividing the parties' marital property, the court awarded the parties' business, a small religious gift shop that it valued at $100,000, to the plaintiff. The court awarded the parties' residence to the defendant; it found that the value of the residence was $435,000 and that the equity therein was $259,000. The court further ordered the residence to be sold after the parties' minor son graduated from high school or turned nineteen years old. To prevent the defendant from encumbering the residence, the court ordered that the residence remain in both parties' names and that the defendant bear all expenses related to it. The court determined that the plaintiff was entitled to 100 percent of the business' value and that the defendant was entitled to 65 percent of the residence's value; accordingly, it ordered that the defendant pay to the plaintiff $90,650 or 35 percent of the proceeds from the sale of the residence, whichever was greater.

The court also granted the plaintiff's three motions for contempt based on its conclusion that the defendant wilfully had disobeyed court orders regarding the finances of the business. As a result of the contempt, the court ordered the defendant to pay the plaintiff $40,000 in attorney's fees. The court, however, also stated that it was awarding such attorney's fees "under . . . § 46b-62." Finally, the court stated that "[t]he remaining pending motions in the case have been considered in the court's orders. They are denied as moot. Any remaining financial claims raised by the parties at trial have been taken into account in the court's equitable deliberations over the property division." This appeal followed.[5]

---

[5] The defendant amended this appeal three times to challenge subsequent decisions of the trial court. Specifically, the defendant amended the appeal to challenge the trial court's November 22, 2022 denial of his motion to disqualify Judge Moukawsher, Judge Nguyen-O'Dowd and Judge Nastri from the trial court proceedings. Next, the defendant amended the appeal to challenge two orders by the trial court issued on February 15, 2023, denying his November 14, 2022 and January 26, 2023 motions to compel discovery

We begin by setting forth the well settled standard of review in domestic relations cases. "[T]his court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law. . . . The question of whether, and to what extent, the child support guidelines apply, however, is a question of law over which this court should exercise plenary review." (Internal quotation marks omitted.) *Renstrup* v. *Renstrup*, 217 Conn. App. 252, 259, 287 A.3d 1095, cert. denied, 346 Conn. 915, 290 A.3d 374 (2023).

I

The defendant first claims that the trial court improperly declined to award child support on the ground that it was not requested by either party. Because a review of the trial court file reveals that the defendant consistently had requested child support, we agree with the

as to certain of the business' expenses. Finally, the defendant amended this appeal to challenge the trial court's April 5, 2023 memorandum of decision addressing several of the parties' outstanding postjudgment motions. In its decision on these motions, the court indicated that the issues raised by the parties either had been addressed in the court's memorandum of decision in the dissolution proceeding or were stayed pending the resolution of this appeal. After noting that the parties' filings had wasted time and money, the trial court ordered that the parties were required to apply for and receive permission before filing any further trial court documents.

Although the defendant refers to some of these postjudgment orders in his brief, he does not raise distinct, fully briefed claims as to these orders.

defendant. We further conclude that, even if not requested, the trial court improperly declined to award child support without considering the applicable statutes and child support guidelines.

The following additional facts are necessary for the resolution of this claim. On May 27, 2022, the trial court issued a trial management order indicating that trial would begin on August 2, 2022. This order required that, not later than five days before the trial date, the parties were to exchange with each other and file, inter alia, fully completed child support guidelines worksheets as required by Practice Book § 25-30 (e), if applicable, and written proposed orders in accordance with Practice Book § 25-30 (c) and (d). On August 1, 2022, both parties filed completed child support guidelines worksheets, in accordance with the trial management order. On his worksheet, the defendant calculated the plaintiff's presumptive current support obligation as $274 per week and the total arrearage owed to him as $26,121. Also on August 1, 2022, the plaintiff filed a corrected notice of compliance with the trial management order in which she requested that neither party pay child support to the other party[6] and the defendant filed his notice of compliance, which stated in part: "For minor teenager son support, the defendant is providing the child support guidelines worksheet as requested in the orders and to be considered for risk mitigations to the minor teenager son support."

The trial in this matter commenced on August 2, 2022.[7] On August 3, 2022, the court issued a trial management order indicating that the trial would resume on August 18, 2022. On August 12, 2022, the defendant filed

---

[6] The plaintiff had filed a previous notice of compliance on July 29, 2022, that did not reference child support.

[7] On August 2, 2022, the defendant filed a revised notice of compliance with the trial management order; this filing contained the same language as his previous filing regarding child support.

another notice of compliance with the trial management orders with proposed orders "for the trial scheduled for August 18, 2022 . . . ." In this filing, the defendant provided the same statement regarding child support as in his previous filings but, in addition, he specifically requested that the court order "the plaintiff to pay the defendant for child support and arrearage." The trial resumed on August 18, 2022, with no mention of the defendant's August 12, 2022 filing.

The court issued its memorandum of decision on September 8, 2022, indicating that child support had not been requested. On September 16, 2022, the defendant filed a motion for reconsideration in which he, inter alia, pointed out that he had requested child support in his August 12, 2022 notice of compliance with the trial management orders. The court denied this motion on September 20, 2022, and the defendant filed this appeal on September 28, 2022. [8] Contrary to the court's statement in its memorandum of decision, the record reveals that the defendant consistently requested child support before, during, and after the dissolution trial.

More importantly, even if not requested, the court improperly declined to award child support without

---

[8] On December 14, 2022, the defendant filed a postjudgment motion for alimony and child support and, on February 14, 2023, the defendant filed a motion for emergency relief, ex parte, postjudgment, in which he requested, inter alia, that the court enter an award for child support and alimony. On April 5, 2023, the court issued a memorandum of decision on several of the parties' postjudgment motions, including the defendant's postjudgment motion for alimony and child support and the defendant's motion for emergency relief, ex parte, postjudgment. In its decision, the court stated: "[The defendant] wants alimony, child support, and discovery. He continues to claim that [the plaintiff] is making far more money from her business than she admits. After a trial, the court concluded he is wrong about this. The court denied him alimony and child support. The trial is over. Discovery was over long ago. If [the defendant] persuades an appellate court that this court is wrong, he will get a chance to ask for these things. He is not entitled to them now." The defendant thereafter amended this appeal to include the trial court's April 5, 2023 decision. See footnote 5 of this opinion.

first considering the applicable statutes and child support guidelines. In considering this issue, we begin with a review of the statutory scheme regarding child support and the guidelines. General Statutes § 46b-84 provides in relevant part: "(a) Upon or subsequent to the . . . dissolution of any marriage . . . the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance. Any post judgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of child support. . . .

"(d) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child. . . ."

General Statues § 46b-215a provides for a commission "to issue child support and arrearage guidelines to ensure the appropriateness of criteria for the establishment of child support awards and to review and issue updated guidelines every four years." General Statutes § 46b-215b provides in relevant part that the "guidelines issued pursuant to section 46b-215a . . . and in effect on the date of the support determination shall be considered in all determinations of child support amounts . . . . In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount to be ordered. *A specific finding on the record at a hearing, or in a written*

*judgment, order, or memorandum of decision of the court, that the application of the guidelines would be inequitable or inappropriate in a particular case,* as determined under the deviation criteria established by the Commission for Child Support Guidelines under section 46b-215a, *shall be required in order to rebut the presumption in such case. . . .*" (Emphasis added.) See also *Maturo* v. *Maturo*, 296 Conn. 80, 118, 995 A.2d 1 (2010) ("[t]he . . . guidelines shall be considered in *all* determinations of child support amounts within the state" (emphasis in original; internal quotation marks omitted)).

Section 46b-215a-5c (a) of the Regulations of Connecticut State Agencies provides in relevant part: "The current support . . . contribution amounts calculated under [the child support guidelines] . . . are presumed to be the correct amounts to be ordered. The presumption regarding each such amount may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case. . . . Any such finding shall state the amount that would have been required under such sections and include a factual finding to justify the variance. Only the deviation criteria stated in . . . subdivisions (1) to (6), inclusive, of subsection (b) of this section . . . shall establish sufficient bases for such findings." The deviation criteria set forth in § 46b-215a-5c (b) of the regulations are: "(1) Other financial resources available to a parent . . . (2) [e]xtraordinary expenses for care and maintenance of the child . . . (3) [e]xtraordinary parental expenses . . . (4) [n]eeds of a parent's other dependents . . . (5) [c]oordination of total family support . . . [and] (6) [s]pecial circumstances . . . ."

In the present case, the trial court found that the parties' fourteen year old son had been living with the defendant. It awarded the parties joint legal custody of their son with the defendant to have primary physical

custody of the child. The court, however, did not discuss whether the parties' son was a "child . . . in need of maintenance" pursuant to the criteria set forth in § 46b-84 (d), nor did it make a finding on the record, as required by § 46b-215b, that the application of the guidelines would be inequitable or inappropriate as determined under the deviation criteria established by the Commission for Child Support Guidelines. Instead, the court simply stated that "[n]either party has asked for . . . child support, so the court will order none." Under these circumstances, we are left to speculate both as to the presumptive child support amount and as to whether application of the guidelines would be inequitable or inappropriate in this case. Considering the applicable statutory framework and child support guidelines previously set forth, we conclude that the trial court abused its discretion in declining to award child support based on its conclusion that it had not been requested. See *Maturo* v. *Maturo*, supra, 296 Conn. 94–95 ("the applicable statutes, as well as the guidelines, provide that *all* child support awards must be made in accordance with the principles established therein to ensure that such awards promote equity, uniformity, and consistency for children at *all income levels*" (emphasis in original; internal quotation marks omitted)); see also *Chowdhury* v. *Masiat*, 161 Conn. App. 314, 322–23, 128 A.3d 545 (2015) (trial court, without reference to applicable statutes and child support guidelines, improperly declined to award child support for parties' oldest child); *O'Brien* v. *O'Brien*, 138 Conn. App. 544, 555, 53 A.3d 1039 (2012) (trial court abused its discretion in entering unallocated award of alimony and child support without considering and applying guidelines or principles espoused therein), cert. denied, 308 Conn. 937, 66 A.3d 500 (2013).

In light of our conclusion that the trial court abused its discretion in the manner in which it addressed child

support, we remand the case for a new trial on all financial orders. "Individual financial orders in a dissolution action are part of the carefully crafted mosaic that comprises the entire asset reallocation plan. . . . Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. Consistent with that approach, our courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards. . . .

"Every improper order, however, does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order is severable if its impropriety does not place the correctness of the other orders in question." (Internal quotation marks omitted.) *Renstrup* v. *Renstrup*, supra, 217 Conn. App. 284.

In the present case, because it is uncertain whether the court's other financial orders will remain intact after reconsidering the child support order in a manner consistent with this opinion, we conclude that the entirety of the mosaic must be refashioned. See id., 285. Accordingly, on remand, the court must consider all the financial orders, including the alimony and property distribution orders.[9]

## II

The defendant next claims that the trial court abused its discretion in finding him in contempt and ordering

___

[9] On remand, the parties shall submit new proposed orders pursuant to Practice Book § 25-30.

him to pay $40,000 in attorney's fees to the plaintiff. As to this claim, we conclude that the court's award of attorney's fees, to the extent it was imposed as a sanction for the defendant's contempt, constituted an abuse of its discretion, which entitles the defendant to a new hearing as to the appropriate sanction for his wilful violation of the court's orders. To the extent that the award of attorney's fees was made pursuant to § 46b-62 (a), this case must also be remanded for reconsideration in light of the new financial orders that will be issued on remand.

In its memorandum of decision, the court set forth the following findings relevant to its finding of contempt: "This has been a pointlessly complex case. Neither party has substantial assets or income. Yet they have battled for years and repeatedly changed attorneys. As the court can see from the filings on the docket, most of the fault for this lies with [the defendant]. He has used the lawsuit as a bludgeon. Worse yet, he has repeatedly ignored the court's orders. The record contains many motions for contempt for him bleeding assets away from the business. The evidence shows that [the defendant] repeatedly withdrew money from the business when he was ordered not to in the plainest possible language. The evidence is clear and convincing: [the defendant] wilfully disobeyed court orders about the business finances as alleged in [the plaintiff's] motions for contempt. These motions are granted."

Our review of this claim is guided by the following principles. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . [C]ivil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . In part because the contempt remedy is particularly harsh . . . such punishment should not rest upon implication or

conjecture, [and] the language [of the court order] declaring . . . rights should be clear, or imposing burdens [should be] specific and unequivocal, so that the parties may not be misled thereby. . . . To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. . . . It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive. . . . The question of whether the underlying order is clear and unambiguous is a legal inquiry subject to de novo review. . . . If we answer that question affirmatively, we then review the trial court's determination that the violation was wilful under the abuse of discretion standard." (Internal quotation marks omitted.) *Mitchell* v. *Bogonos*, 218 Conn. App. 59, 68–69, 290 A.3d 825 (2023).

We first consider whether the directives to the defendant that form the basis for the court's finding of contempt were clear and unambiguous. A review of the file reveals that on February 19, 2020, the trial court, *Connors, J.*, approved an agreement of the parties that provided in relevant part: "Defendant will account for all cash taken from the business since the filing of the divorce, as well as monies taken in [November and December] of 2019. . . . Plaintiff and defendant will work together at the marital business. All cash will be deposited daily by both parties together at Webster Bank." In docket entries ##109.00 and 112.00, the plaintiff alleged that the defendant had failed to account for the cash taken from the business since the filing of the divorce, as well as monies taken in November and December, 2019. In docket entry #112.00, the plaintiff also alleged that the defendant had not deposited the monies into the Webster Bank account and, instead,

had deposited the monies with a different financial institution.

On January 12, 2022, the trial court, *Nguyen-O'Dowd, J.*, entered an order that provided, in part, that the plaintiff was to operate the parties' business, and the defendant was to transfer the Comcast account for the business to the plaintiff and provide the plaintiff with the username and password to access the business banking accounts online.[10] In docket entry #262.00, the plaintiff alleged that, although the defendant had vacated the business, he had changed the password on the business computer so the plaintiff could not access or use the computer. In its decision, the court found that the defendant wilfully had disobeyed court orders regarding the finances of the parties' business as alleged in the plaintiff's motions for contempt, docket entries ##109.00, 112.00 and 262.00. On the basis of our review of the foregoing, we agree with the trial court that the orders forming the basis for the contempt finding were clear and unambiguous.

We next consider whether the trial court's finding that the defendant had not complied with these orders was clearly erroneous. "The clearly erroneous standard is the well settled standard for reviewing a trial court's factual findings. A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 326–27, 966 A.2d 292, cert. denied, 292 Conn. 902, 971 A.2d 40 (2009).

---

[10] The court determined that it was necessary to give the plaintiff exclusive control over the business pending the final dissolution judgment due to problems with the defendant's management of the business during the weeks that he ran the business, including his tendency to "draw" more from the business than he reported as generated during those weeks.

If the court's determination that the defendant had not complied with the court's orders was not clearly erroneous, we next consider whether the defendant's noncompliance was wilful. "Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the trial court. . . . Without a finding of wilfulness, a trial court cannot find contempt and, it follows, cannot impose contempt penalties." (Internal quotation marks omitted.) *Mitchell* v. *Bogonos*, supra, 218 Conn. App. 69. "To the extent that [this] claim requires us to examine findings that were based on witness testimony, we note that [t]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Internal quotation marks omitted.) *Netter* v. *Netter*, 220 Conn. App. 491, 501, 298 A.3d 653 (2023).

On the basis of our review of the record, the trial court reasonably could have concluded that the defendant had not complied with the court's orders and that his noncompliance was wilful. The plaintiff testified at trial that, beginning in July, 2020, she and the defendant agreed that they would each operate the business on alternating weeks. The defendant, however, did not deposit all the money that he received during the weeks when he operated the business. On the basis of a summary admitted into evidence, the plaintiff testified that from June through December, 2021, the defendant deposited no cash from the business into either the Webster Bank business account or the defendant's Bank of America account to which she had access. The defendant provided no evidence to contradict this testimony. The plaintiff testified that she learned from a customer

that the defendant was accepting payments on Cash App,[11] even though the business did not accept Cash App as a method of payment.[12] The plaintiff also testified that the defendant did not provide the log in credentials for the business computer to the plaintiff, which resulted in her being locked out of the account and having to hire someone to assist her in regaining access to it. In light of this testimony, we cannot conclude that the court's finding that the defendant was not in compliance with the court's orders was clearly erroneous.[13] Because the underlying findings were not clearly erroneous, we conclude that the court properly exercised its discretion in granting the plaintiff's motions for contempt.

As to the award of attorney's fees, the court stated: "The behavior at issue was a running theme through

[11] "Cash App is a peer-to-peer money transfer service that allows users to deposit and store money on the app." *H&R Block, Inc.* v. *Block, Inc.*, 58 F.4th 939, 945 (8th Cir. 2023).

[12] On September 7, 2021, the trial court, *Nguyen-O'Dowd, J.*, entered an order that provided, in part, that "the parties shall only accept credit/debit card payments or checks made out to the business for all purchases. The parties shall not accept any payment by cash or through a cash app, Venmo, PayPal, Zelle, or the like, until further order of the court." In its order of January 12, 2022, the trial court stated that its September 7, 2021, order remained in effect.

[13] We note that, on March 2, 2022, the defendant filed a document, which contained numerous exhibits, captioned "Compliance Marital Business Cash Report from November, 2019, through February, 2020." In this document, the defendant outlined purported remuneration and payments to the business during this period and indicated that, by agreement of the parties, he was permitted to deposit cash into a Bank of America account. At trial, the plaintiff disagreed that this was the accounting that the defendant was required to provide and maintained that the defendant had not accounted for all the cash that he took from the business from November, 2019, to February, 2020. It was for the court to determine what weight to give this competing evidence. Further, this document neither addresses the defendant's failure to deposit cash from the business into the Webster Bank account, as ordered by the court, nor the defendant's failure to comply with the court's order that he provide to the plaintiff the log in credentials for the business accounts.

the pretrial period and into the trial. Because of this misconduct, the court awards [the plaintiff] attorney's fees under General Statutes § 46b-87. Because the home equity is the best source of income to pay fees, the court also awards them to [the plaintiff] under . . . § 46b-62. Following the 213 docket entries and the needlessly disorganized trial, [the plaintiff] requests $40,000 in fees in her proposed orders. The court knows she has spent more. The court finds this $40,000 number under the circumstances reasonable. They will be paid from the proceeds of the home sale." A review of the court's decision, therefore, reveals that the court awarded attorney's fees pursuant to §§ 46b-87[14] and 46b-62.[15]

Section 46b-87 grants the court the discretion to award attorney's fees to the prevailing party in a contempt proceeding. "The award of attorney's fees in contempt proceedings is within the discretion of the court. . . . An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did. . . . Importantly, *where contempt is established, the concomitant award of attorney's fees properly is awarded pursuant to § 46b-87 and is restricted to efforts related to the contempt action*." (Citation omitted; emphasis added; internal quotation marks omitted.)

---

[14] General Statutes § 46b-87 provides in relevant part: "When any person is found in contempt of an order of the Superior Court entered under section 46b-60 to 46b-62, inclusive, 46b-81 to 46b-83, inclusive, or 46b-86, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt . . . ."

[15] General Statutes § 46b-62 (a) provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter and sections 17b-743, 17b-744, 45a-257b, 46b-1, 46b-6, 46b-301 to 46b-425, inclusive, 47-14g, 51-348a and 52-362, the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, any parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

*Malpeso* v. *Malpeso*, 165 Conn. App. 151, 184, 138 A.3d 1069 (2016).

Additionally, "[i]n dissolution and other family court proceedings, pursuant to § 46b-62 (a), the court may order either [spouse] to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the equitable criteria set forth in [General Statutes] § 46b-82, the alimony statute." (Internal quotation marks omitted.) *Zakko* v. *Kasir*, 209 Conn. App. 619, 625, 269 A.3d 220 (2022). That statute provides in relevant part that that the court "shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ." General Statutes § 46b-82 (a). "[A]n award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders." (Internal quotation marks omitted.) *Zakko* v. *Kasir*, supra, 626.

In the present case, the trial court awarded $40,000 in attorney's fees to the plaintiff but did not cite any evidence in the record that the $40,000 in attorney's fees related to the three motions for contempt. Instead, the court made general statements regarding the defendant's behavior and the "213 docket entries and the needlessly disorganized trial . . . ."[16] While it is true that the plaintiff requested $40,000 in attorney's fees in her proposed orders, this amount was not tied to the

---

[16] We note that the trial court's memorandum of decision, dated September 8, 2022, is docket entry #314.10 in the trial court file.

plaintiff's request that the court find the defendant in contempt. On this record, insofar as the court awarded the plaintiff $40,000 in attorney's fees as a sanction related to the defendant's contempt, it does not appear that the award "is restricted to efforts related to the contempt action." (Internal quotation marks omitted.) *Malpeso* v. *Malpeso*, supra, 165 Conn. App. 184. Consequently, to the extent that the court awarded the $40,000 in legal fees as a sanction for the defendant's contemptuous conduct, it abused its discretion in doing so. The defendant is thus entitled to a new hearing as to the appropriate sanction for his wilful violation of the court's orders.

The court further stated, however, that "[b]ecause the home equity is the best source of income to pay fees, the court also awards [attorney's fees] to [the plaintiff] under . . . § 46b-62." An award of attorney's fees pursuant to this statute "is a function of the parties' financial circumstances" which "depend directly upon the final financial orders issued by the court in its dissolution judgment." *O'Brien* v. *O'Brien*, supra, 138 Conn. App. 556–57. Accordingly, because the court's financial orders will be reconsidered in their entirety on remand, the trial court may consider whether to award attorney's fees pursuant to § 46b-62 as part of the new financial orders.

The judgment is reversed only as to the financial orders and the award of attorney's fees, and the case is remanded for a new trial on all financial issues and for a new determination of the appropriate contempt sanctions; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.